# Winters v. Powell, et al.

## Ejectment.

(Decided November 28, 1912. Rehearing denied February 13, 1913.
61 South. 96.)

1. *Quieting Title; Remaindermen; Cloud.*—To establish his ulti-
mate right a remainderman may maintain a bill to remove a cloud
on his title pending the life estate, without affecting the life tenant;
a cloud on title being that .which appears to be title, but in law and
in fact is not.

2. *Limitation of Actions; Reversioners; Action by.*—Where a tes-
tator devised his real estate to his wife for life, and she attempted
to convey a fee, the reversioners had no right of action for the recov-
ery of possession during the life of the life tenant, and hence, during
that time, limitations did not run against them for the recovery of
possession.

3. *Reversions; Reversioners; Laches.*—Where heirs entitled as re-
versioners to the fees on the death of a life tenant who had attempt-
ed to convey the fee, delayed in suing for possession of the property
during the life of the life tenant, it was not such laches as would
bar an action by the reversioners after the death of the life tenant.

4. *Same; Recording Deeds; Notice to Reversioners.*—The record-
ing of a deed from a life tenant purporting to convey the fee does
not carry notice to the reversioners of any change in the nature of
the right under which the grantee claims to hold as there is no
privity between the reversioners and the life tenant.

5. *Adverse Possession; Prescription.*—There can be no prescrip-
tion where there has been no default in duty nor any delay in the
assertion of rights.

6. *Life Estates; Conveyance by Life Tenant; Title Acquired.*—A
conveyance by a life tenant purporting to convey the fee is effective
only to pass the estate of the life tenant, and the taking of possession
by the grantee and the recording of the deed do not require action
by the reversioners to protect their rights pending the existence of
a life estate.

7. *Vendor and Purchaser; Life Tenant; Conveyance by.*—Where a
grantee in a deed placed the purchasing testator in possession and

[Winters v. Powell, et al.]

endorsed on the deed a transfer thereof to the purchaser, and neither the deed nor the transfer thereof was recorded, but the purchaser held possession adversely, and under undisputed rights for more than ten years prior to his death, and devised all his real estate to his wife for life, and after his death his grantor executed a conveyance in fee to the wife, who conveyed the fee to a third person for a valuable consideration, the purchaser from the wife acquired only the life estate as against the reversioners notwithstanding the provisions of section 3383, Code 1907, since the wife acquired only a life estate under the will, and the deed to her from the husband's grantor passed no title as such grantor had none to convey.

8. *Same; Bona Fide Purchasers; Subsequent Purchasers.*—Subsequent purchasers protected by the provisions of section 3383, Code 1907, are those who claim title under the same grantor as those against whom its protection is afforded.

9. *Same; Notice.*—Where a vendor exhibits to the purchaser a deed in his chain of title which recites a mere nominal consideration, the purchaser is put on notice as to the true state of title.

10. *Same.*—A purchaser must inquire whether, beyond his own declarations, his vendor has any title, and to entitle him to protection the purchaser must purchase the legal title and not be a mere purchaser without semblance of title.

(McClellan and Somerville, JJ., dissent.)

APPEAL from Coosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action in ejectment by Lige Powell and others against Z. D. Winters. Judgments for plaintiff and defendant appeals. Affirmed.

GEORGE A. SORRELL, for appellant. If adverse possession could operate against the plaintiffs in this case then plaintiffs could not recover.—*Woodstock I. Co. v. Fullenwider,* 87 Ala. 584; 3 Pom., secs. 220-398; 4 Lea 105. The remaindermen could have gone into equity for removal of a cloud on their title.—*Lansden v. Bone,* 90 Ala. 448; *Lowery v. Davis,* 8 So. 79; *Gindrat v. Wes. Ry.,* 96 Ala. 162; *Robinson v. Pearce,* 118 Ala. 304. Having failed to do this and having acquiesced for twenty years in the state of title as recorded the reversioners are now barred to assert their title. Plaintiffs were put on notice of adverse holdings, and the possession became adverse.—*Fay v. Welborn,* 112 Ala. 160.

[Winters v. Powell, et al.]

The defendants were purchasers for value without notice, and are protected by section 3383, Code 1907.

WILLIAM H. & J. R. THOMAS, and FELIX L. SMITH, for appellee. Adverse possession cannot run against the remainderman until the falling in of the life estate and the remainderman has no right of action until that time.—*Pendley v. Mason,* 83 Ala. 484; *Robinson v. Allison,* 124 Ala. 325; *Johnson v. Oldham,* 126 Ala. 312; *Edwards v. Bender,* 121 Ala. 77; *Zimmerman Co. v. Wilson,* 147 Ala. 278. Therefore, the statute of limitations does not begin to run until the accrual of the right of action in the remainderman. The will, although it did not describe the property in kind, was notice to the purchaser of the rights of the reversioners in the real estate of the testator.—*York v. Leverett,* 159 Ala. 531; *O'Neal v. Prestwood,* 153 Ala. 447; *Kinnebrew v. Kinnebrew,* 35 Ala. 634. The defendant here was not within the protection of section 3383, Code 1907, but come clearly within the provisions of section 3385, Code 1907, and the will having been duly recorded, they cannot claim as bona fide purchasers without notice.— *Sheridan v. Schimpf,* 120 Ala. 475; *Marks v. Clisby,* 126 Ala. 114; *DuBose v. Blakeney,* 167 Ala. 637.

SAYRE, J.—This is an action of ejectment brought by appellees, who claimed as children and heirs of George Powell, deceased, against appellant, Winters. Defendant (appellant) has traced an unbroken paper title back to one Rylant, who was in possession of the land at the date of his sale to one Pinson in 1868, two links being furnished by a deed from Pinson to Fannie Powell, widow of George, in 1888, and the deed of Fannie Powell, in 1893, to one Batson, who stands in the series as one of defendant's predecessors in title.

The testimony for defendant went to show that Batson had known Mrs. Powell and the land in controversy since 1886, at which time she was in possession, cultivating and claiming to own the same, and so remained until the time of his purchase from her, when he paid to her the amount named in her deed, and received possession from her. At that time she claimed to own the land, and exhibited to him her deed from Pinson as the source of her title. Batson testified that at the time of his purchase he had no knowledge or information that any one other than Fannie Powell owned or claimed to own the land. Batson conveyed to N. C. Willingham on a valuable consideration, and she, having married defendant, died, leaving a will by which she devised the land to her husband.

On the other hand, Pinson, being then in the possession and ownership of the land, in 1868 had sold it to George Powell. No deed was executed, but, instead, Pinson put Powell in possession, and in 1871 delivered the deed he had received from Rylant, with the following indorsement thereon: "We hereby transfer the within deed to George Powell * * * to have and to hold to their [his] full use and benefit, hereby relinquishing all claim against said described land"—after signing the same in the presence of a witness. Neither the deed from Rylant to Pinson nor Pinson's indorsement to Powell has ever been recorded. Powell, with his family, occupied the land as a homestead under undisputed claim of ownership until 1879, when he died. The relevant part of his will, which was shortly thereafter duly probated and recorded, after providing for the payment of debts and funeral expenses, made the following disposition: "I give my wife Fannie Powell, all my real estate and during her lifetime and to be used by her for the support and benefit of the family

and herself after such debts and expenses be paid."
The property in suit was not described in the will.
Mrs. Powell died in 1910, and plaintiffs' contention,
allowed in the court below, is that thereupon they be-
came entitled to sue and have possession of the land.

Error is attributed to the trial court on two grounds:
(1) That Mrs. Powell and those under whom defend-
ant claims held the land adversely to plaintiff's for
more than 10 years. (2) That defendant is a bona fide
purchaser for value without notice.

1. The contention that the widow Powell, and those
through whom defendant traces title back to her, held
adversely to the plaintiff's during her lifetime, when
considered in connection with the evidence offered to
sustain it, concedes—at least it does not deny—that
title had vested in George Powell, and, in consequence,
that his relict received and for years held possession
under his will. The argument is that, when the widow
Powell took a deed from Pinson and put it upon record,
she put plaintiffs upon notice of her adverse holding,
and thereupon plaintiffs had a right to go into equity
to remove the cloud cast by her deed upon their title
in remainder, and, quoting the opinion in *Woodstock
Iron Company v. Fullenwider*, 87 Ala. 584, 6 South.
197, 13 Am. St. Rep. 73, "the failure to exercise this
right for over 20 years is such laches as authorizes the
inference that the right to do so is barred in any one
of the modes in which that result may be effected." A
remainderman may, for the establishment of his ulti-
mate right, maintain a bill in equity to remove a cloud
from his title in remainder pending the particular
estate without in any wise drawing into question or
affecting the interest of the life tenant.—*Lansden v.
Bone*, 90 Ala. 446, 8 South. 65. But a cloud upon title
is that which appears to be, but in law and in fact is

not, title. The only harm which can result from a cloud is that the holder of the title may find his property unmarketable, and at some distant time may have difficulty in producing the evidence requisite to rebut it, or to show its true nature. "But if," as Judge FREEMAN has remarked in his note on the *Fullenwider Case,* 13 Am. St. Rep. 73, "he chooses to suffer these inconveniences * * * no presumption can justly be indulged from the failure to bring an action to remove a cloud upon a title, because, as a cloud is not title, it may continue to the end of the world without becoming anything more substantial." However, it seems there may be cases in which such a bill, so timed, is necessary to prevent the destruction of the rights of reversioners or remaindermen by the lapse of 20 years under the doctrine of prescription. An example is found in *Woodstock Co. v. Fullenwider, supra,* relied upon by appellant. As was made plain in *Robinson v. Pierce,* 118 Ala. 273, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160, the ratio decidendi of that case, however debatable, is to be found in the doctrine of estoppel which found application in the fact that, while the proceedings in the probate court for the sale of lands against which the plaintiff there claimed were void in law, they were effective to vest an equitable title in the purchaser, and put upon the remainderman the necessity of doing equity as a condition precedent to the exercise of equity powers for his relief—specifically, in that case it was necessary that the remaindermen tender to the purchaser the amount bid at the sale under which the defendant claimed. The ruling was that a failure for more than 20 years to exercise the right to file a bill, dependent upon an offer to do the specific equity which the proceedings for the sale of the land had devolved upon plaintiffs, along with a neglect for that length of

time to do that equity, was such laches as authorized an inference, cognizable in the law court, that the right to do so had been barred in any one of the modes in which that result might have been effected. There has been a disposition to withhold approval of that case; but we need not pursue the subject further, for in *Bolen v. Hoven,* 143 Ala. 652, 39 South. 379, where, as here, there was no element of estoppel, this court denied the identical proposition now urged by appellant, stating the rule which obtains in such cases in this language: "Until the termination of the life estate, the remainderman," or, we may add, the reversioner, as here, "had no right of action for the recovery of the possession of the land. The statute of limitations can never run against the remainderman during the existence of the life estate, for the reason that no cause or right of action is in the remainderman, nor can there be any adverse possession as to him. For like reason there can be no ouster of a remainderman who has neither the possession, nor right of possession, during the life of the life tenant"—citing *Pickett v. Pope,* 74 Ala. 122, where our statutes on the subject (now sections 3406 and 3420 of the Code 1907) are referred to, and some other of our cases on the subject. Several cases to the same effect are cited in *Blakeney v. Du-Bose,* 167 Ala. 638, 52 South. 746. Identical considerations prevent the imputation of laches to appellees. They have not been in default in the performance of any equitable duty to appellant. Prior to the death of Mrs. Powell there was never a time when they could have had judgment or decree operative presently upon the possession or enjoyment of the property. Where there has been no default in duty nor any delay in the assertion of rights, there can be no prescription. *Robinson v. Pierce,* referred to in argument by appellant

as if it supported his view of the case, was also different. There the trustee's deed, which stood in the way of the remaindermen, though its execution and delivery constituted a breach of trust, did nevertheless convey the legal title, and neglect was imputed to the remaindermen in that they failed to pursue by bill in equity the only remedy which would ever in any event be open to them.

The conveyance by the tenant for life, though it purported to convey the fee, was effective only to pass the estate of the grantor.—*McMichael v. Craig,* 105 Ala. 382, 16 South. 883; *Hall v. Condon,* 164 Ala. 393, 51 South. 20. Since, as we have seen, possession taken under it imposed upon the reversioners, no duty of activity pending the life of the grantor, no more did the less significant fact of recording the deed. Nor did that record carry notice to the reversioners of any change in the nature of the right under which the parties to that deed claimed to hold, if that were important. There was no privity between the tenant for life and the reversioners. "To hold the proprietors of land to take notice of the record of deeds, to determine whether some stranger has without right made conveyance of their lands, would be a most dangerous doctrine, and cannot be sustained with any color of reason or authority."—*Bates v. Norcross,* 14 Pick. (Mass.) 224.

2. We find no satisfactory ground upon which to rest a decision that appellant was a purchaser for value without notice within the purview of the statute declaring all conveyances of real estate inoperative and void as to purchasers for valuable consideration without notice, unless the same have been recorded before the accrual of the right of such purchasers (Code of 1907, § 3383), or within three months from their date, as the statute then was (Code of 1876, § 2166). A

concession that Pinson's release to Powell, indorsed upon Rylant's deed to Pinson, was a conveyance within the meaning of that statute, would not necessarily lead to a judgment for appellant. Powell's title did not depend upon the release, but we cannot conceive that he was, or that those holding under him are, in any worse case because he took it. He held possession of the land adversely and under undisputed right for more than ten years prior to his death, so that Pinson's deed to his (Powell's) widow, of date nearly 20 years after Powell went into possession under his purchase, passed no title to her. Apart from the effect which appellant would ascribe to Powell's failure to record his title by release, so to speak, neither the widow's deed to Batson, nor the subsequent deeds under which appellant claims, passed any title as against the reversioners; for, where no title passes by a conveyance for the reason that the true title is in a person other than the vendor, the fact that the purchaser paid value and had no notice is immaterial, and, of course, he can have no protection as against the real owner or his successors in title unless by force of statute or on the principle of estoppel.— 23 Am. & Eng. Encyc., p. 482. There is in this case no element of estoppel; and the subsequent purchasers of whom the statute speaks and whom it intends to protect are those who claim title under the same grantor as those against whom its protection is afforded.—2 Dev. Deeds (3d Ed.), p. 1314. Mrs. Powell had no title or interest beyond her life estate. As to the interest in reversion she was a stranger. Neither her declarations as to the character and extent of the interest claimed by her, nor her exhibition of a deed from Pinson, who at the time of its execution had no title, will authorize a judgment destructive of the reversion. Her exhibition of that deed was no more than a declara-

tion of title, and that of a questionable title, for its recital of a merely nominal consideration was enough to put her vendee on notice of its true state. "A purchaser must be bound to inquire whether, beyond his own declarations, his vendor has any title to the property he is selling. Otherwise it would be in the power of any agent, tenant, or mere trespasser to deprive the owner of his property by a sale. To entitle himself to protection the purchaser must have purchased the legal title, and not be a mere purchaser without semblance of title."—*Dudley v. Witter*, 46 Ala. 664.

On the undisputed facts, the trial court properly gave the general charge for the appellees, and its judgment will be affirmed.

Affirmed. All the Justices concur, except McClelLAN and SOMERVILLE, JJ., dissenting.

SOMERVILLE, J.—(dissenting).—My view of the case is that Geo. Powell acquired a valid paper title to the land in question by the release indorsed by Pinson on the back of his deed from Rylant, the original owner. —*Wisdom v. Reeves*, 110 Ala. 418, 18 South. 13.

This being so, and his deed of release not being recorded, any future purchaser for value from Pinson (other than a mere quitclaimee) without knowledge or notice of Powell's prior purchase would be protected by the statutes of registration against Powell's otherwise superior claim. And no title derived from Powell, whether by grant, devise, or descent, can stand in any better case . Fannie Powell, his widow, was not a purchaser for value, and had full knowledge of the true state of the title. Hence her deed from Pinson in 1888 vested in her no title as against her children's title in remainder derived by will from her husband, their father. Nevertheless, her grantee for value in good

faith, without notice of the prior conveyance from Pinson to Geo. Powell, would take a title superior thereto. And, though her immediate grantee, Batson, may have had such notice, yet a purchaser for value without notice by grant from Batson would equally acquire a title superior to Geo. Powell's.—*Fenno v. Sayre*, 3 Ala. 458.

So in my opinion the ultimate question to be determined was simply and only whether the defendant's testatrix had actual or constructive notice of Pinson's conveyance to Geo. Powell; and, it being here shown that his testatrix was a purchaser for value, the burden of proving prior notice to her of the unrecorded conveyance to Geo. Powell was upon the plaintiffs, claiming through that conveyance.—*Hodges v. Winston*, 94 Ala. 576, 10 South. 535. There is no evidence that defendant's testatrix had any actual knowledge of that conveyance; and nothing whatever to show that she knew, or had any opportunity to know, that Geo. Powell ever bought or claimed or occupied the land, or how long Mrs. Powell had occupied it, if at all. The textatrix bought the land from Batson, who was at the time in its peaceable possession and control, and Batson then had a record title running back to Pinson, who, on the face of the record, was the owner of the land when he conveyed it to Mrs. Powell. The former possession of Geo. Powell, and the ensuing possession of Mrs. Powell, was not constructive notice to defendant's testatrix at the time of her purchase, for at that time her grantor Batson was in peaceable and exclusive possession under his deed from Mrs. Powell.—*Christopher v. Curtis-Attalla Lumber Co.*, 175 Ala. 484, 57 South. 837; 39 Cyc. 1752 (f). If it were conceded that the recitals of nominal or inadequate considerations in the several deeds constituting her chain of title back to Pinson may

[Winters v. Powell, et al.]

have suggested an inquiry by the testatrix as to the history and integrity of her grantor's claim, they could not, I think, be conclusive in law of that issue. But I cannot concede that the character or amount of the considerations appearing in antecedent deeds of record demand any inquiry on the part of a purchaser who buys from the last grantee who is then in the peaceable and exclusive possession of the land. In such a case the purchaser is surely not bound to hunt up remote grantors and inquire as to possible deflections of their title which do not appear of record; for, if so, it would seem that the statutes of registration are altogether vain and useless. Nor was the record of Geo. Powell's will, which did not in any way describe the land devised, he not appearing on the records to have had any connection with the title, any notice to her of Pinson's conveyance to Powell, or of Powell's claim to the land.

On the whole evidence I can find nothing which tended to put the testatrix on notice of Geo. Powell's purchase from Pinson, nor indeed of any outstanding claim to the land by his devisees. I therefore am of the opinion that the trial court erred in instructing the jury to find for the plaintiffs if they believed the evidence; and also in refusing to give the general affirmative charge for defendant, as requested by him in writing. At the very least, it seems to me it was for the jury to determine whether the meager facts known to defendant's testatrix were sufficient to impose upon her the duty of inquiry as to the past history of the land, and whether reasonable inquiry would have uncovered the true facts.

So far as concerns the protection afforded to defendant by the statutes of registration, I do not conceive that it makes the slightest difference that Pinson had no title when he conveyed to Mrs. Powell, for in such

cases only has the statute any field of operation, and for such only is it intended. It may be that, had Geo. Powell acquired Pinson's title merely as the result of an adverse possession for ten years, not being a purchaser from him, there would have been nothing for the registration statutes to operate upon and that a title thus independently acquired would have been superior to that of a subsequent bona fide purchaser for value from Pinson. But, as already pointed out, that is not this case.

McClellan, J., concurs in this dissent.