[The State v. Schmidt.]

# The State *v.* Schmidt.

*Ejectment.*

(Decided February 6, 1913.   61 South. 293.)

1. *Public Land; School Lands; Title.*—Under the act admitting Alabama as a State on its acceptance of every sixteenth section to township uses for schools the State took no property therein but assumed a trust of a personal nature, and not one fixed upon the land itself.

2. *Adverse Possession; Property Subject to Prescription.*—Under the act admitting Alabama as a State the provisions of the Constitution of 1819 and succeeding constitutions, and section 2794, Code 1896, it is held that there is nothing in the terms of the grant that made the ·statute inapplicable, and consequently adverse possession under color of title of the sixteenth section lands for twenty years in the adverse holder would vest title in such holder as against the State.

APPEAL from Talladega City Court.

Heard before Hon. CECIL BROWNE.

Ejectment by the State of Alabama against Sudie Schmidt to recover lands in the sixteenth section. Judgment for the defendant and the State appeals. Affirmed.

ROBERT C. BRICKELL, Attorney General, and R. B. EVINS, for appellant.   The sixteenth section lands in this State were granted to the inhabitants of the several townships for a specific use, viz.: the use of schools. —Act of Congress, approved March 2, 1819; Act of Congress, approved March 2, 1827.   This grant, which was in the form of a proposal, the acceptance of which was a pre-requisite for the admission of the State into the Union, was accepted, as made, by the inhabitants of the state in convention assembled, on August 2nd, 1819.—See Code 1907, Vol. 1, pp. 82-83.   Upon the acceptance of these proposals, the state was admitted into

the Union.—See Congressional Resolution, Dec. 14, 1819, Code, Vol. 1, p. 39. By the grant of these lands for the particular use, the United States retained title for all other purposes or uses.—*Northern Pac. Ry. Co. v. Townsend,* (U. S.), 23 Sup. Ct. Rep. 671. The state of Alabama, in accepting the proposals upon which its admission as a state was made contingent, disclaimed all right and title to waste or *unappropriated* lands lying within said territory.—See clause in Fourth proposal of Act of Congress approved March 2, 1819, (Code, Vol. 1, p. 37; Ordinance of Convention, Code, Vol. 1, p. 82-83. All other uses or purposes to which said sixteenth section lands might be put, except the use for schools, being *unappropriated* by the United States, came within the above disclaimer. Acts of Congress, made in pursuance of the Federal Constitution are "the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any state to the contrary, notwithstanding. —Art. 6, Sec. 2, Constitution of United States. A statute of limitations, whereby lands granted by the United States to a specific use, are diverted from that use into private ownership, is in conflict with the Act of Congress making the grant, and void.—*Northern Pac. Ry. Co. v. Townsend,* (U. S.) 23 Sup. Ct. Rep. 671. The state has no power to divert sixteenth section school lands from the specific use to which they were dedicated by the Act of Congress.—*Northern Pac. Ry. Co. v. Townsend, supra; Trustees of Vincennes University v. State of Indiana,* 14 Howard, 269; *Springfield Township v. Quick,* 6 Indiana, 83; same case, on appeal, 22 Howard, 56; *Davis v. Indiana,* 94 U. S., 792; *Morton v. Granada M. F. Academies,* 16 Miss., 773; *Shively v. Bowlby,* 152 U. S., 1. The acceptance of the proposals of the Act of Congress of March 2, 1819, created a con-

tract between the United States and the State of Alabama, and the attempted diversion of these lands by the passage of statutes of limitations violates the obligation of this contract and is void.—*Fletcher v. Peck,* 6 Cranch, 87; *Fenn v. Kinsey,* 45 Mich. 446, 8 N. W. Rep. 64; *Covington v. Commonwealth,* (U. S.) 14 Sup. Ct. Rep. 1089; *U. S. v. Great Falls,* 21 Md. 119; *Lowery v. Francis,* 2 Yerg (Tenn.) 534; *Woodruff v. North Bloomfield Co.,* 18 Fed. 786. The Acts of Congress making the grant are construed most strongly against the grantee, and in favor of the United States.—*U. S. v. Michigan,* 190 U. S., 379, 23 Sup. Ct. Rep. 749. The Acts of Congress approved March 2, 1819, and March 2, 1827, are in pari materia, and must be construed as if passed at the same time.—*Plummer v. Murray,* 51 Barb. (N. Y.) 201; *People v. Aichison,* 7 How. Pr. 241. Each Constitution of the State of Alabama has contained a clause which was a continuation of the original acceptance of these sixteenth section lands for the use for which granted, and of the promise to preserve them for that use.—Constitution 1819, subject "Education," Code, Vol. 1, p. 79; Constitution 1861, subject "Education ," Code Vol. 1, p. 101; (Identical with above); Constitution 1865, art. 4, sec. 33; Constitution 1868, article 11, section 10; Constitution 1875, article 12, section 2; Constitution 1901, section 260. The policy of granting sixteenth section lands for the use of schools is very old, having its source in the Act of Congress of 1875, providing "that there shall be reserved lot No. 16, of every township for the maintenance of public schools within the township" and in article 3 of the ordinance establishing the North West territory, July 13th, 1787, in the words: "Religion, morality and knowledge, being necessary to good government and

[The State v. Schmidt.]

the happiness of mankind, schools and the means of education shall be forever encouraged."

KNOX, ACKER, DIXON & SIMS, for appellee.  The only proposition involved is whether or not defendant under the agreed statement of facts acquired title to the land by adverse possession against the state.  That question is not now open to debate.—*Miller v. The State,* 38 Ala. 600; *Wyatt v. Tisdale,* 97 Ala. 594; *Prestwood v. Watson,* 111 Ala. 604; *T. C. I. & R. R. Co. v. Lynn,* 123 Ala. 112; *Cox v. University,* 161 Ala. 639; *Gaston v. State,* 88 Ala. 451; *School Com'rs v. Aiken,* 5 Port. 169; *Long v. Brown,* 4 Ala. 662; 18 Howard, 172; 19 Howard, 18; 32 Cyc. 868; 149 U. S. 652; 76 Amer. St. Rep., 474 and note; 190 U. S., 269; 197 U. S., 1; 206 U. S. 482.

McCLELLAN, J.—Statutory ejectment.  An agreed statement of facts raises, as was intended, the single question whether *adverse* possession of sixteenth section school lands, under the Code 1896, § 2794, and its predecessors, was operative to invest title in an *adverse* holder of such lands under color of title.  The contention is that such statutes are invalid, because inconsistent with acts of Congress, including that admitting Alabama as a state in 1819, and because in conflict with the Constitution of the United States and with the several Constitutions of this state in the particulars that Alabama's organic laws touched the subject of the sixteenth section school lands.

Since *Long v. Brown,* 4 Ala. 622, and *Cooper v. Roberts,* 18 How. 173, 15 L. Ed. 338, contain a full recital of the history of sixteenth section school lands, their legal status and the beneficent motives that inspired the devotion of such lands, or the proceeds of such lands, to purposes of education, there is no occasion to repeat, generally, those matters at this time.

In necessary affirmance of the *entire* validity of the statutes of limitations with respect to sixteenth section school lands in this state, this court ruled, in *Miller v. State,* 39 Ala. 600, that title might be acquired by an *adverse* possession for the requisite period to effect that result, premising that the stated application of the doctrine did not conclude any right of the state; for the state had no property in such lands. The pertinent pronouncement of *Miller v. State, supra,* has been since approved in *Gaston v. State,* 88 Ala. 459, 7 South. 340; *Wyatt v. Tisdale,* 97 Ala. 594, 12 South. 233; *Prestwood v. Watson,* 111 Ala. 604, 20 South. 600; and *T. C., I. & R. R. Co. v. Linn.,* 123 Ala. 112, 26 South. 245, 82 Am. St. Rep. 108.

In *Wyatt v. Tisdale, supra,* the court said (Justice COLEMAN writing) : "The authority of the Legislature to make the statute apply to suits by the state, or for the recovery of sixteenth section lands, is not doubted; and there is no reason why a different construction should be given the statute or a different principle applied when the suit is by the state, or one claiming through the state, than that applied to private persons."

The inspiration of the action taken by the federal government, with respect to sixteenth section lands, was the terms of the cession of Georgia.

In the proposals submitted for acceptance, as conditions to the admission of Alabama to the Union, was this: "First. That the section numbered sixteen in every township, and when such section has been sold, granted, or disposed of, other lands equivalent thereto, and most contiguous to the same, shall be granted to the inhabitants of such townships for the use of the schools."

This proposal, as were the others, was accepted by Alabama. But there being no entity representative of the inhabitants of townships capable of taking the legal title to the section it became then vested in the state for the benefit of those for whom the bounty was intended. The state had no property therein, though upon it rested the high public duty to conserve the application of the subject of the grant to the purpose for which it was bestowed. The trust. so established was thus defined in *Cooper v. Roberts, supra* (Justice CAMPBELL writing) : "The trusts created by these compacts relate to a subject certainly of universal interest, *but of municipal concern, over which the power of the state is plenary and exclusive.*" (Italics supplied.)    See *Dunklin County v. Dunklin Co. Court,* 23 Mo. 449, 456, 457; *Gaston v. State,* 5 Or. 48; *Supervisors, etc., v. Burchell,* 31 Ill. 68.

This was the fundamental conception to which may be referred the stated ruling of this court in *Miller v. State.* The trust thus accepted by the state was of a personal nature, exalted as that was in the plighted public faith, not a trust fixed upon the land itself by the terms of the grant, and abiding with the land in all events.

Now, the grant in *Northern Pacific Railway v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044, was radically different from that of the sixteenth section lands. There the donation was for the particular public purpose of constructing a railroad through the public domain. The nature of the grant itself forbade such disposition of the area granted as would defeat its permanent application to the public purpose entertained and expressed in its donation. The opinion takes special, controlling account of this fact. In there determining the nature and character of the estate taken un-

[The State v. Schmidt.]

der such a grant, it was, of course, held that an estate in the likeness of a "limited fee" only passed; an implied condition of reverter being raised up to effect the reversion to the government, if the land ceased to be used or retained for the purpose designated. In respect of the school lands, their disposal was anticipated. The grant, in the proposal submitted to and accepted by the state, was of the fee, without limitation upon the power of the state.—*Cooper v. Roberts, supra.* And the act of Congress purporting to allow the sale of such lands was unnecessary and vain, other than as evidencing the good faith of the state in the premises.—*Cooper v. Roberts, supra; Long v. Brown,* 4 Ala. 622, 629.

The views prevailing in *Board of Trustees of Vincennes University v. Indiana,* 14 How. 272, 14 L. Ed. 416, are not opposed to the conclusions prevailing in the later decision of that court in *Cooper v. Roberts, supra.* The sum of the holding there was that the corporation created by Indiana took, upon its creation, the theretofore abeyed title to the subject of that grant (for a seminary of learning) ; and that Indiana was without power to divest the title so invested.

We see nothing in the terms of the grant of the sixteenth section lands, or in any binding act of Congress to which we have been referred, that presented or presents an obstacle to the valid application of the statute of limitations and of the doctrine of adverse possession to such lands.

This state has, from the beginning, faithfully performed its obligations with respect to these lands and the great purpose inspiring their grant. See its several Constitutions and Aikin's Dig., p. 373, § 19; Clay's Dig., p. 519 et seq., and codifications of 1852 and subsequently.

[Doe, ex dem. Rowe v. Goetchius.]

The Constitution of 1819 and its several successors have pledged the good faith of the state in the premises. But with all there is no provision of those organic laws of Alabama wherefrom it could be concluded that sixteenth section lands should be exempt from the application and effect of laws of limitation applicable to all other lands, save those devoted to a public, governmental purpose or beneficiary owned by the state. The particular injunction, expressed by the Constitutions of this state, that such lands should be preserved from "waste or damage," and the funds derived therefrom faithfully applied to the object of the grant, certainly intended no restriction upon the power of the state, which in this "municipal concern" is "plenary and exclusive." The conclusion is that the statutes assailed were valid. The result is that the judgment must be affirmed.

Affirmed. All the Justices concur, except DE GRAF-FENRIED, J., not sitting.