(79 South. 110)

WILEY et al. v. WILHITE.    (8 Div. 101.)

(Supreme Court of Alabama.    April 11, 1918.
On Rehearing, May 9, 1918.)

1. EVIDENCE  ⊂═⊃342 — ADMISSIBILITY — PUBLIC LAND RECORDS.

In partition of "sixteenth section" school lands, where complainant claims as an heir, a transcript of the register of sixteenth section notes authenticated by the state auditor as public custodian by virtue of Acts 1915, p. 217, was admissible to show that complainant's father had bought the land from the state and paid for it.

2. EVIDENCE  ⊂═⊃83(3) — PRESUMPTIONS — PAYMENT OF VENDOR'S NOTES.

In partition of "sixteenth section" school lands, where complainant claimed that his father had bought the land from the state, giving four notes therefor, and the register of the sixteenth section notes kept by a public custodian showed payment of the two notes last due, it will be presumed that the other notes were paid, especially where the vendee has had undisturbed possession for many years.

3. PARTITION  ⊂═⊃63(3) — OWNERSHIP — EVIDENCE.

In partition, where complainant claimed that his father had bought the land from the state as "sixteenth section" school land, evidence that the purchase-money notes were paid, and that the vendee had remained in possession for many years, authorizes the presumption that the certificate was issued which, under Code 1852, § 539, conveyed a conditional estate in fee.

4. DOWER  ⊂═⊃114(4)—SALE OF LAND—TITLE OF GRANTEE.

Where a state has granted "sixteenth section" school land, and the grantee's widow retains possession by virtue of her dower right, a subsequent attempted grant by the state to her is of no effect, and a conveyance by her passes only her interest in the life estate; its execution and delivery not even constituting notice to the reversioners of any change in the title of the property.

5. DOWER  ⊂═⊃114(4)—SALE OF LAND—INNOCENT PURCHASERS.

Purchasers from a widow occupying land to which her husband held title from the state, as doweress, are not as against one holding under the real owner, entitled to the protection of an innocent purchaser for value without notice.

On Rehearing.

6. EVIDENCE  ⊂═⊃83(1) — PRESUMPTIONS — OFFICIAL RECORDS.

Where a duty is imposed by law upon an official, and a record manifesting a discharge of that duty is preserved, and is found in a custody consistent with its official creation, the presumption is that the record is a correct representation of the official act which it purports to memorialize.

7. EVIDENCE  ⊂═⊃342—RECORDS.

In partition of "sixteenth section" school lands, a transcript of the register of sixteenth section notes kept by the state auditor as public custodian, under Acts 1915, p. 217, and authenticated by him, was not inadmissible because the state auditor had no power as public custodian at the time the transactions memorialized therein took place, where the register at that time was kept by the state comptroller under Code 1852, § 365.

Appeal from Circuit Court, Morgan County; R. C. Brickell, Judge.

Suit by J. C. Wilhite against S. L. Wiley and another for partition. From decree for complainant, respondents appeal. Affirmed, and rehearing denied.

Callahan & Harris, of Decatur, for appellants. Sample & Kilpatrick, of Cullman, for appellee.

McCLELLAN, J.  J. C. Wilhite, the appellee, filed this bill against S. L. and H. M. Wiley for the purpose of having the 120 acres of land therein described sold for division among them as tenants in common. The complainant alleges his ownership of a one-seventh undivided interest in the whole tract, and that each of the respondents owns an undivided six-sevenths interest in respective halves of the 120 acres. The court below concluded that the stated averment of tenancy in common was sustained; and thereupon awarded the relief sought.

The land involved is a part of the "sixteenth section" school lands, in township 8, range 4, in Morgan county, Ala. The complainant is a son of J. P. Wilhite, and claims his undivided interest in the land in virtue of his inheritance thereof from his father. J. P. Wilhite, the father, lived on the land in the 50's and until he went off to war. He died, after his return to his home, in 1865 or 1866. During his absence his wife, Jane Caroline Wilhite, and his children lived on the place, and after his death they continued, for some years, to reside thereon. In the fall of 1866 the personal representative of the intestate filed a petition in the probate court to have this 120 acres—of 320 acres alleged to have been owned by J. P. Wilhite—set apart and allotted as dower to the widow, Jane Caroline Wilhite. The record of the proceedings in the probate court recites, and the return of the officer affirms that the widow, Jane Caroline Wilhite, had notice of the petition and its purpose in her behalf. In due course this 120 acres was allotted and confirmed as her dower in the estate of her deceased husband. She and the children continued thereafter to reside on this 120 acres. On the 8th of March, 1882, Jane Caroline Wilhite received from the state of Alabama

a patent or grant of this 120 acres; the instrument reciting that she had made complete payment therefor, according to the provisions of the act approved January 15, 1828, authorizing the sale of "sixteenth sections." The respondents, the Wileys, would trace their unqualified title through mesne conveyances from Mrs. Wilhite, who died in 1913. In other words, the respondents assert that Mrs. Wilhite became, through the grant to her by the state, the owner of the fee in this tract. The complainant relied upon, and the court below vindicated his claim, that J. P. Wilhite, his father, purchased this land from the state in 1852, payment therefor being made by him to the state, out of which there was carved the widow's dower in 1866 —67—a life estate in her that terminated upon her death in 1913. Since the act approved June 19, 1915 (Gen. Acts 1915, p. 217), became effective the state auditor has been the official custodian of all papers, documents, and records relating to the "sixteenth section" lands. The feature of this act constituting the auditor the custodian of all papers, documents, and records relating to public lands is not restricted to "swamp and overflowed lands." The phrase so providing has reference to the papers, etc., pertaining to the several characters of lands mentioned in section 1 of that act.

This certificate of the state auditor was introduced in evidence by the complainant:

We may appropriately quote this immediately pertinent expression from Barry v. Stephens, 176 Ala., at page 96, 57 South., at page 468:

"The law presumes that public officers discharge their duty, nothing to the contrary appearing; and it must therefore be presumed that the trustees issued the certificate of purchase upon the acceptance by them of the notes" —then remarking that "this presumption is strengthened by the lapse of over 50 years since the transaction."

The certificate contemplated invested the purchaser with the legal title to the land, subject, only, to the subsequent happening of an event that should extinguish his title. Watson v. Prestwood, 79 Ala. 416. The statute (Code 1852, § 539), said the court in the last-cited case, contemplated that, as soon as the purchase-money notes are given and approved, and a certificate of purchase is issued, the purchaser shall take possession and occupy as owner, and that his possession cannot be divested, so long as he observes and performs the obligations he takes upon himself by the purchase." The doctrine of this decision was fully recognized and applied in Barry v. Stephens, supra.

[2] The authenticated record from the auditor's office (official custodian) discloses unmistakably that J. P. Wilhite became, in October, 1852, a purchaser, and gave the state four notes, with two sureties, for purchase money, as Code 1852, § 535, prescribed. This

Register of Sixteenth Section Notes from the County of Morgan.

| Principal. | Securities. | | | Date of Note. | T. | R. | Amt. | Remarks. |
|---|---|---|---|---|---|---|---|---|
| J. P. Wilhite | A. M. Wilhite | & | J. Stringer | Oct. 4, 1852 | 8 | 4W | 203.25 } | Ext. by same |
| " | " | " | " | " | " | " | 203.25 | |
| " | " | " | " | " | " | " | 203.25 | Pd. 16, July, 58 |
| " | " | " | " | " | " | " | 203.25 | Pd. 16, July, 58 |

The State of Alabama, County of Montgomery, City of Montgomery.

I, the undersigned, M. C. Allgood, State Auditor, do hereby certify that the above is a true, correct and exact copy of the register of the sixteenth section notes as pertaining to notes executed by J. P. Wilhite as to lands purchased by him in Section 16, T. 8, R. 4 West, Morgan County, Alabama, and that this department is the custodian of said record under an act of the Legislature of 1915.

Witness my hand and seal of office this, the 30th day of January, 1917.

[1] The subject-matter of the transcript and the authenticating certificate of the state auditor were admissible in evidence. Code, § 3983; Adams v. C. of Ga. Ry. Co., 198 Ala. 433, 73 South. 650.

By sections 537, 538, of the Code of 1852, it was provided that on a sale of "sixteenth section" lands by the trustees, they should take notes for the purchase price; and, when the notes had been executed and accepted that they should give the purchaser the certificate of purchase therein prescribed. Section 539 of the Code of 1852 also provided:

"Such certificate conveys to the person therein named, his heirs and assigns, a conditional estate in fee, to become absolute on the payment of the purchase money and interest. * * *"

section required the purchaser to give four notes, maturing annually, and the transcript shows that to have been done by J. P. Wilhite in 1852. The transcript further discloses that the two notes last listed were paid July 16, 1858. It is entirely reasonable to conclude from this recital of payment, especially in the light of the fact that the purchaser's possession was undisturbed by the state during many years of his life and the occupancy of the premises by his wife and children, and later, from his death up to 1882, by his widow and children, that the notes thus paid were those representing the final installments of his purchase-money obligation.

[3, 4] While there is no direct evidence that a certificate was ever issued to J. P. Wilhite

for this purchase, it is to be presumed from the established facts of purchase and the giving of the statute prescribed notes, possession of the land for many years, and the affirmative recital of payment of the two notes last listed in the transcript, that an appropriate certificate was issued to J. P. Wilhite prior to his death in 1866. Berry v. Stephens, supra. From this status it results that J. P. Wilhite acquired the legal title, subject to defeasance at the instance of the state. Code 1852, §§ 539, 540. There is no proof even tending to show that the state, or any one else for that matter, ever questioned the title or possession of J. P. Wilhite during his lifetime. The correctness of the conclusion that J. P. Wilhite perfected his title to the land here involved is emphasized by the further fact that this 120 acres was set apart in 1867 to the widow as her dower in his landed estate. That proceeding was had and its purpose effectuated in virtue of J. P. Wilhite's unqualified ownership of the land here in question. The widow was notified of the pendency and object of the proceeding. She is not shown to have resisted this provision of dower for her. Being to her advantage and being advised of its pendency and progress and no repudiation by her in any manner being indicated, it is only fair to assume that she accepted this provision for her welfare. Ency. of Evi. pp. 905, 906. In the 120 acres allotted for her dower, she took a life estate only. In 1882 the state of Alabama had no title to convey to Jane Caroline Wilhite; the title then being in the heirs at law of J. P. Wilhite, deceased, subject to the life estate in her, Jane Caroline Wilhite, under the consummated proceedings to allot dower to her. The conveyance by Jane Caroline Wilhite, the life tenant, even after the attempted grant by the state, only operated to pass the estate she held, viz. a life estate (dower) in the 120 acres. McMichael v. Craig, 105 Ala. 382, 388, 16 South. 883. The recording of her conveyance, a fortiori its mere execution and delivery, did not carry notice to the reversioners of any change in the right whereby the property was held. Winters v. Powell, 180 Ala. 425, 61 South. 96. Neither prescription nor adverse possession, nor laches, can intervene, pending the life of the life tenant, to prejudice the rights or title of the remainderman or reversioner. Bolen v. Hoven, 143 Ala. 652, 39 South. 379; Winters v. Powell, 180 Ala. 425, 431, 61 South. 96. There being no evidence of estoppel effective against the complainant, in whom an undivided one-seventh interest in the 120 acres became vested upon the death of J. P. Wilhite in 1866, subject, of course, to the dower consummate in the widow, which terminated with her life in 1913, the complainant's title, in the fractional proportion stated, was existing and unimpaired when this bill was filed; and so the court below correctly concluded when it held that complainant was a tenant in common, to that extent, with these respondents.

[5] It is hardly necessary to note, in conclusion, that none of the ostensible purchasers in the line of attempted conveyances following that of Jane Caroline Wilhite, of which these respondents are two, are entitled, as against the complainant whose title to a one-seventh undivided interest has never been divested, to the protection usually accorded an innocent purchaser for value without notice. They would trace their claim through the conveyance by Jane Caroline Wilhite, who had no interest or title, beyond a life estate, to convey; and in such circumstances the statutes afford no protection. Winters v. Powell, 180 Ala. 425, 433, 434, 61 South. 96.

The decree is free from error. It is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

## On Rehearing.

In support of the application for rehearing it is insisted, as upon the authority of Martin v. Hall, 72 Ala. 587, that the court below erred in treating as admissible, for its bearing on the issues in contest, the authenticated transcript from the "Register of Sixteenth Section Notes from the County of Morgan," reproduced in the original opinion. The point now urged is that there was, when this register was made up, no statute requiring or authorizing any official to keep the register, the transcript of which the state auditor authenticated in virtue of the custodial authority conferred upon the state auditor by the act approved June 19, 1915 (Gen. Acts 1915, p. 217). In the brief for the appellants, filed at the submission, the point now pressed was not argued, though this objection to the admission of the authenticated transcript was specifically taken in the court below. The argument then presented only went to the authority of the state auditor to make the authentication, upon the ground that the cited act (there is no other of like effect) did not constitute that official the custodian of records relating to sixteenth section lands as of the period to which the subject-matter of the authenticated transcript has reference. After pressing the proposition last defined, it was remarked in the original brief that discussion of "all of the objections noted to this piece of testimony" would be omitted for that the objections were full and specific. The question then argued was decided; it being ruled that the state auditor was constituted by the act cited the official custodian of all the records relating to sixteenth section lands; and hence was authorized by Code, § 3982, to certify to the transcript from the "register of notes." Nevertheless, if the particular objection now pressed had been argu-

ed in the brief on submission, viz. that during the period to which the subject-matter of the transcript refers, 1852–1858, there was no statute authorizing or requiring the keeping of such a record, the court is of the opinion that the statutes then authorized and required such record to be kept by the comptroller, a state official. By section 535 of the Code of 1852 the township trustees were required to take from the purchaser of such lands four notes, with sureties as prescribed, for the purchase money of sixteenth section lands sold by them, the notes being made payable to the state of Alabama, maturing annually. Section 541 required these trustees to deliver the notes taken and approved by them (section 535) to the judge of probate of their respective counties. Section 542 required the judge of probate to deposit such notes in the office of the comptroller within six months after their receipt by him from the trustees. Section 545 prescribed that no patent should issue except upon the certificate of the comptroller that the purchase money and interest had been paid. By section 365 of the Code of 1852, in effect during the period in question, the comptroller was required (subdivision 3) "to keep the accounts in relation to the school fund, and every other special or trust fund in which the state is [was] interested, the keeping of which is [was] not specially entrusted to other officers." There was then no statute imposing upon any other officer the duty of keeping accounts in relation to the trust funds arising from the sale of sixteenth section school lands. The 'state's relation to such funds and to obligations given by purchasers of these lands was that described in the quotation from Code 1852, § 365. State v. Schmidt, 180 Ala. 374, 61 South. 293, and cases therein noted. It was the duty of the comptroller to keep a correct record of the purchase-money notes deposited by the judges of probate "in the office of the comptroller"; that official being required to give his receipt therefor to the judge of probate. Code 1852, § 542. It is to be presumed that this duty, imposed by law upon the comptroller, was discharged by the comptroller. The "register of sixteenth section notes from the county of Morgan," presently authenticated by the state auditor, shows that, at the time, a record was kept showing the principal, the securities, the date of the note, the township and range, and the amount; and, in this instance, memoranda that payments had been made of the two last maturing notes. There is nothing in the cause reflecting upon the integrity of the subject matter of the transcript, or of the transcript itself.

[6,7] Where, as here, a duty is imposed by law upon an official, and a record manifesting a discharge of that duty is preserved and is found in a custody consistent with its official creation, the presumption is, in the ab-

sence of evidence to the contrary, that the record is a correct representation of the official act or transaction it purports to memorialize. 9 Ency. of Evi. p. 952, and notes; 16 Cyc. pp. 1076–1079, and notes. The authenticated transcript was not inadmissible because not authorized or required to be kept.

The other point pressed in the brief for rehearing has been reconsidered in the light of the argument. The court continues satisfied with its original conclusion, viz. that. the effect of the memoranda of payment, in the transcript, opposite the description of the notes last maturing, although a different memorandum was set opposite the description of the two notes first maturing, justified the view that all the notes were paid. But aside from this, and as indicated in the original opinion on the authority of the statutes (Code 1852, §§ 535, 538–540), and Watson v. Prestwood, 79 Ala. 416, it does not appear that the title passing to the purchaser of the "conditional estate in fee" was ever sought to be divested by the state for any of the causes enumerated in Code 1852, §§ 539, 540.

The application for rehearing is accordingly overruled.

Application overruled.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.