WELBORN et ux. v. EARLE et al.*
(No. 6811.)

(Court of Civil Appeals of Texas. Austin. Jan. 7, 1925. Rehearing Denied Feb. 4, 1925.)

1. **Vendor and purchaser ⬤═232(5, 6)—Grantees' purchasers not put on inquiry by grantors' possession as to whether one recorded deed absolute on face was intended as mortgage, and other was void for failure of consideration.**

Grantors' possession of conveyed property after recordation of deeds absolute on their face was no evidence of ownership, and did not put grantees' purchasers on inquiry as to whether one deed was in fact a mortgage, and other deed was void for failure of consideration.

2. **Estoppel ⬤═118—Evidence held to sustain finding that grantors led grantees' purchasers to believe that grantors had no further claim to land.**

Evidence held to sustain finding that grantors led grantees' purchasers to believe that grantors had no further claim to the land, precluding grantors from claiming as against purchasers that deed was a mortgage.

3. **Vendor and purchaser ⬤═230(1)—Deed held not to put grantees' purchasers on inquiry as to whether consideration had failed.**

Deed reciting that the consideration was $5,000, and that "the sum of $3,500.00 is cash money to us in hand paid partly in other prop-

erty," held not to put grantees' purchasers on inquiry as to whether consideration had failed.

4. **Vendor and purchaser ⬤═230(1)—Grantees' purchasers entitled to accept express recitals of deed as to consideration as true.**

Grantees' purchasers were entitled to accept express recitals of deed to their grantors as to consideration as true.

5. **Homestead ⬤═122—Grantors who conveyed land to enable grantee to obtain loan, and who assisted grantee in obtaining loan, were estopped to claim mortgage invalid.**

Grantors who conveyed land to grantee to enable him to procure loan thereon, and who assisted grantee to procure loan, knowing that he was asserting title to the land, will not be permitted as against mortgagee to assert title and invalidity of mortgage on ground that land was their homestead.

6. **Deeds ⬤═203—Testimony that plaintiff had conveyed a half interest in land to attorney held admissible.**

In action involving validity of conveyance, in which there was testimony that plaintiff stated that his attorney would not let him dismiss case, further testimony that plaintiff had deeded a half interest in the land as a fee to his attorney held admissible.

7. **Trial ⬤═121(1)—Comment by defendant's counsel in argument to jury as to interest of plaintiff's counsel in property involved held proper.**

Where evidence that plaintiff had conveyed a half interest in the land involved to his attorney as a fee was material in view of contention that plaintiff would have dismissed case if his attorney would have let him, comment of defendant's counsel in argument to jury as to interest of plaintiff's attorney in the property held not improper.

8. **Trial ⬤═114—Latitude allowed attorneys in argument of cases before juries.**

Considerable latitude is always allowed attorneys in argument of cases before juries so long as they confine such argument to a discussion, explanation, or interpretation of the testimony properly in the record.

9. **Appeal and error ⬤═301—Matter not complained of in motion for new trial not considered.**

Matter not complained of in motion for new trial will not be considered on appeal under Rev. St. art. 1612, and district and county court rules Nos. 101, 101a.

10. **Appeal and error ⬤═690(4)—Refusal to exclude testimony not referred to specifically in bill of exceptions will not be considered.**

Refusal to exclude evidence will not be considered where bill of exceptions does not refer specifically to the evidence.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Trespass to try title by A. B. Earle and wife against R. C. Welborn and wife, in which C. C. McElreath and others were inter-

pleaded. From judgment rendered, defendants appeal. Affirmed.

Felix M. Bransford and Ocie Speer, both of Fort Worth, for appellants.

Benjamin Chilton, of Dallas, for appellee Union Life Ins. Co.

Capps, Cantey, Hanger &' Short, of Fort Worth, for A. B. and A. G. Earle.

F. B. Walker, of Fort Worth, for McElreath and Blackburn.

BAUGH, J. In March, 1921, A. B. Earle and wife sued R. C. Welborn and wife in trespass to try title to 85½ acres of land in Tarrant county, Tex., and sequestrated the land, which was then replevied by Welborn. The Welborns answered by general demurrer and general denial, and impleaded C. C. McElreath and D. E. Blackburn of Tarrant county, and the Union Central Life Insurance Company, a corporation, with headquarters in Dallas county. Against the impleaded parties and the original plaintiffs the Welborns set up an action in trespass to try title to the same 85½ acres of land, alleging amongst other things that said 85½ acres of land was on April 28, 1920, and long prior thereto had been, the separate property of L. P. Welborn, wife of R. C. Welborn, and that it was their homestead; that on or about said date they conveyed 50 acres of said land to C. C. McElreath and D. E. Blackburn for a recited consideration of $5,000, of which $3,500 was cash and property, and the remainder was the assumption by grantees of $1,500 outstanding indebtedness against the 85½ acres; that only $50 in cash was ever paid them; and that the remaining recited cash consideration failed, in that the other property, which was to be conveyed to said Welborn and wife free of liens, was heavily incumbered. They also alleged that the value of said property to be conveyed to them was misrepresented and said conveyance procured by fraud. Appellants also alleged that the said McElreath and Blackburn failed, neglected, and refused to pay off said $1,500 lien assumed by them, but let same mature, and induced appellants to convey to them on June 9, 1920, the remaining 35½ acres in order to enable them to get a loan on said whole tract of 85½ acres and pay off said $1,500 lien, promising appellants that they would turn over to appellants all excess of said loan over the $1,500. Appellants further alleged that said McElreath and Blackburn did obtain from the Union Central Life Insurance Company a loan of $3,400, which is alleged to be void because against their homestead, which fact was known or should have been known to all said parties at the time, because appellants were at all times in possession of the premises. Further allegations were that said McElreath and Blackburn agreed that upon obtaining the loan they would then reconvey all of said lands to appellants; that appellants' deed to them was only conditional; that they were never paid for their property; and that the insurance company and A. B. Earle, who purchased the land from McElreath and Blackburn, had actual and constructive notice of all these facts and circumstances. Appellants then asked for cancellation of all said instruments, and that they be quieted in their title to all of said land.

A. B. Earle and wife answered by supplemental petition, denying all said allegations pleaded that they were innocent purchasers for value without notice of any such claims, and that their conduct and the representations to them by appellants before their purchase of said lands' from McElreath and Blackburn, and while negotiations therefor were pending, estopped appellants from setting up any such claims.

McElreath and Blackburn answered generally and specially, pleaded not guilty, and alleged that said conveyances were both bona fide purchases in which they paid to the Welborns valuable considerations as agreed upon, which considerations were accepted by said Welborns, and have never been returned to nor tendered back to them.

The Union Central Life Insurance Company also answered by general and special pleas, alleging that it had made the loan in good faith to the record owners of the lands without any notice of the claims of the Welborns therein; that the conveyances were absolute on their face; that $1,500 of the $3,400 loan made by said company was for the purpose of paying off the debt owed by the Welborns themselves; that at the time the loan was made on said lands the said Welborns knew that it was being made to C. C. McElreath as the owner of said lands; and that they actively assisted said McElreath and the Insurance Company in removing objections to the title to said land by making affidavits, in order to enable McElreath to get such loan, and were therefore estopped to assert any claims therein. Said company then alleged maturity of its debt according to its terms, and asked judgment therefor and for foreclosure of its lien on the land.

The appellants sought no personal judgment against any one, but only that the instruments mentioned be canceled, and that their title to and possession of the lands be restored to them.

The case was submitted to a jury on special issues. A peremptory charge to find in favor of the Union Central Life Insurance Company for its debt and foreclosure of its lien was given. On the other issues the jury found in favor of A. B. Earle and wife and against the Welborns, and judgment was rendered awarding title and possession to the Earles, giving the insurance company judgment for its debt against C. C. McElreath and foreclosure of its lien, and that the Wel-

borns take nothing. From this judgment R. C. Welborn and wife appeal.

## Opinion.

Appellants assert error of the trial court under eight assignments upon which they base eleven propositions of law. The first assignment and first three propositions thereunder complain of the trial court's action in giving peremptory instruction in favor of the Union Central Life Insurance Company. Under the view we take of the case, this assignment becomes immaterial in any event. We pass, therefore, to the second assignment, which complains of the answer of the jury to special issue No. 1. This issue and the jury's answer thereto were as follows:

"At or prior to the date that the plaintiffs purchased the lands in controversy, did R. C. Welborn and L. P. Welborn lead the plaintiffs to believe that they had no further claim to the land in controversy?" To which the jury answered: "Yes."

Appellants' first proposition under this assignment is that there is no evidence to support it. Since our discussion of the second proposition thereunder disposes of this assignment, we pretermit a consideration of the first.

[1, 2] The second proposition is that this finding is contrary to the overwhelming preponderance of the evidence. We have read carefully the testimony on this issue, and do not agree with appellants' contention. The deeds from the Welborns to McElreath and Blackburn were absolute on their face, and were recorded. The possession by the Welborns, under these circumstances, was no evidence of ownership. This question will be discussed later. Other than this, the testimony of A. G. Earle and his wife clearly sustains the finding of the jury. In their testimony they were corroborated, in part at least, by the testimony of the witnesses Baker and Reynolds. To the contrary was the testimony of R. C. Welborn and his wife. We do not deem it necessary to set out or summarize the testimony. The jury had these witnesses before them. It was their prerogative to believe or disbelieve whom they chose, and they found against the appellants. The appellate courts have repeatedly held that, where the testimony is conflicting, findings of the jury based thereon will not be disturbed on appeal, unless such findings are so contrary to the overwhelming preponderance of the evidence as to clearly show prejudice or undue influence. That is not true in this case. On the contrary, we think the finding of the jury was sustained by the evidence.

Appellants' third assignment complains of the answer of the jury to special issue No. 2, which was as follows:

"Did A. B. Earle or A. G. Earle have actual knowledge at the time they bought the 85½ acres of land in question that the Welborns were claiming that the sale of the 35½-acre tract to McElreath was not a bona fide sale of the homestead?" To which the jury answered: "No."

Appellants' contention is that Earle had both actual and constructive notice, and was charged as a matter of law that the sale of said 35½ acres was only an attempted mortgage of the homestead. We think there is no merit in this. The authorities cited by appellants as to what constitutes notice as general rules are correct, but none of them apply to the exact case before us. The evidence undoubtedly shows that Earle and wife had no actual notice of the Welborns' claims. Nor was the deed to McElreath such as to call for any inquiry on their part. It was absolute on its face, was duly recorded, and recited a consideration of $4,000 "to us in hand paid by C. C. McElreath, the receipt of which is hereby acknowledged." The only notice, if any, then that they could have had was possession by the Welborns of the premises which they had already conveyed to McElreath. That such possession did not put them upon inquiry as to any claims the Welborns might have has been expressly determined by our Supreme Court in the case of Eylar v. Eylar, 60 Tex. 315. That case is on all fours with the case before us. J. F. Eylar and wife conveyed their homestead to O. A. Eylar, who afterwards conveyed the property for a valuable consideration to Ann Eylar, his mother. J. F. Eylar and wife, who, as had the Welborns, remained in possession of the land after such conveyance, brought suit for the land, claiming that their deed to O. A. Eylar was only intended to operate as a mortgage. Judge Stayton, in passing upon the question here raised, used the following language:

"By the deed in question, the parties who now assert claim through a secret agreement declared in the most solemn form that the land in controversy was the property of O. A. Eylar; they permitted that declaration to be placed on record for the very purpose of giving information to all persons as to the true ownership.

"Such being true, can the simple fact that they remained in possession of the land which they had declared belonged to another, which they might lawfully do as the tenants at sufferance or otherwise of such person, make it requisite for any person who may desire to buy from the person whom they have so declared to be the owner, to inquire of themselves whether or not they had uttered the truth in their deed, whether or not their own declaration was false?

"We are of the opinion, under the facts in this case, that a purchaser from O. A. Eylar was not bound to inquire of the appellees what right they had in the land; that the inquiry was sufficiently prosecuted; prosecuted as far as a prudent man, having a due regard to the rights of others, and to his own protection, would be bound to prosecute it, when he looked to the record and there found that O. A. Eylar

WELBORN v. EARLE 985

was declared by the very persons in possession to be the true and absolute owner of the land."

This rule laid down in the Eylar Case has been expressly approved in the following cases: Hurt v. Cooper, 63 Tex. 362; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Lippencott v. York, 86 Tex. 283, 24 S. W. 275; Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258; Paris Grocer Co. v. Burks, 101 Tex. 113, 105 S. W. 174; Harris v. Hamilton (Tex. Com. App.) 221 S. W. 275; and Hunter v. Hale (Tex. Civ. App.) 233 S. W. 1010; Tuerpe v. Commission Co. (Tex. Civ. App.) 245 S. W. 741. See, also, 27 R. C. L. p. 723, § 487. It conclusively disposes of appellants' contention on this issue.

Appellants' fourth assignment is addressed to issue No. 3 submitted to the jury, which was as follows:

"At or before the purchase of the land in controversy by plaintiffs from C. C. McElreath, did the plaintiffs have actual knowledge of the claims of the Welborns that the consideration for the 50-acre tract of land had failed?" To which the jury answered: "No."

[3, 4] Appellants insist that such answer was contrary to the evidence, because same showed that Earle and wife had both actual and constructive notice thereof. Without further discussion as to actual notice of such claims suffice it to say that the evidence was insufficient on that issue. The only constructive notice was the possession of said 50 acres by the Welborns, which is finally disposed of adversely to appellants in the discussion, supra, and the deed to said 50 acres from the Welborns to McElreath and Blackburn. Appellants insist that the consideration recited in the deed was such as should have put Earle and wife upon inquiry which, if pursued, would have disclosed that the consideration had failed. The consideration in said deed, in addition to the assumption by grantees of an outstanding debt of $1,500 and lien on the property read as follows:

"For and in consideration of the sum of five thousand and no/100 dollars, to us paid, and secured to be paid by C. C. McElreath and D. E. Blackburn as follows: The sum of $3,500.00 is cash money to us in hand paid partly in other property."

Then followed the assumption clause. There is no contingency nor condition expressed in such cash portion of the consideration, nor is it in any sense executory. The recital that the consideration to the extent of $3,500 is *paid* is in effect, and tantamount to, an acknowledgment of the receipt thereof, and leaves nothing to arouse any suspicion or inquiry in subsequent purchasers as to whether or not such consideration in fact passed. The deed is absolute on its face, and subsequent purchasers were entitled to accept its express recitals as true. Downs v. Stevenson (Tex. Civ. App.) 119 S. W. 318.

[5] From these conclusions and the findings of the jury, it clearly appears that A. G. Earle and wife were innocent purchasers for value of the land, and entitled to recover both title and possession against the Welborns. Consequently, appellants' first assignment complaining of the peremptory instruction in favor of the insurance company on its debt and mortgage becomes immaterial. The insurance company asserted no debt against the Welborns. Having lost their land to the Earles, it was immaterial to the Welborns who had further claims against it, so long as such claims did not involve them. In any event, however, the evidence clearly showed that the appellants assisted McElreath in procuring his loan on the land, knew that he was asserting title thereto, and pleaded that they were to have what was left of the loan after the old $1,500 debt on the land was paid off. To sustain their contention now as against the insurance company would be nothing more nor less than upholding a fraud upon the insurance company, which they admittedly participated in, in order to get part of the money obtained thereby.

What we have said also disposes of appellants' fifth assignment, which asserts the homestead claims of appellants.

[6] The sixth assignment complains of the testimony of McElreath, over appellants' objection, that Welborn had told him that he had deeded his attorney a half interest in the land as a fee. Appellants insist that same was irrelevant, immaterial, and prejudicial. We think this testimony was relevant. In his pleadings Welborn had charged McElreath with fraud in securing conveyances to him of the land. McElreath had answered that the conveyances were bona fide. In connection with the testimony objected to, he had also testified that Welborn stated he did not want to lay down on him (McElreath), but that he did not care what happened to Mr. Earle or the loan company. He further testified that Welborn went up to see his attorney, and that his attorney would not let him dismiss the case. If, as contended by appellees, Welborn was not acting in good faith in the matter, and would have dismissed the case as to McElreath but for the refusal of his attorney, to whom he had deeded half the property, appellees were entitled to show that. On this issue raised by the pleadings and the evidence, we think the testimony was relevant and admissible. "When fraud is imputed and within the issue, provable by various circumstances, a considerable latitude must be indulged in the admission of evidence." 10 R. C. L. § 87, p. 926.

[7, 8] Appellants' seventh assignment com-

plains of the argument by appellees' counsel, in which counsel stated to the jury:

"Let us remember that, while Mr. Bransford is talking, he is also talking for his interest in this property, for the records in this case show that he has a deed to a part of this property from the Welborns."

Bransford was counsel for appellants.

We find no error in this. As stated above, the evidence that the Welborns had conveyed to their attorney an interest in the land was, under the circumstances, properly admitted. That being true, counsel were entitled to discuss that testimony. Though it was not discussed in connection with the issue on which it was admitted, we do not think that the remark complained of was inflammatory or prejudicial to appellants' rights. Considerable latitude is always allowed attorneys in argument of cases before juries, so long as they confine such argument to a discussion, explanation, or interpretation of the testimony properly in the record. 38 Cyc. 1485; Cotton Oil Co. v. Carson (Tex. Civ. App.) 185 S. W. 1002; Life Ins. Co. v. Griswold (Tex. Civ. App.) 212 S. W. 807.

Appellants' eighth and last assignment is as follows:

"The court erred in overruling the defendants' motion duly presented at the conclusion of the testimony, requesting the court to instruct the jury not to consider the testimony of any witness as to the facts or matters transpiring subsequent to January 22, 1921, the date of the deed from C. C. McElreath and wife to A. B. and A. G. Earle touching the intentions of R. C. and L. P. Welborn relative to their vacating the property in controversy."

[9] Appellants in their brief admit that this matter was not complained of in their motion for a new trial. In the absence of such, we cannot consider the matter here. See article 1612, R. S.; Rules 101, 101a for District and County Courts (159 S. W. 11); Neeley v. White (Tex. Civ. App.) 208 S. W. 991; Patterson v. Bushong (Tex. Civ. App.) 196 S. W. 962; Stewart v. McAllister (Tex. Civ. App.) 209 S. W. 704.

[10] Nor does the bill of exceptions taken at the time set out or refer specifically to the testimony objected to. The only way we could discover just what testimony was referred to would be to read the entire statement of facts, which consists of over 300 typewritten pages. In addition to the rules above stated, this testimony is not sufficiently pointed out to entitle us to consider a refusal to exclude it. See Ry. Co. v. Leak, 64 Tex. 654; Stone & Webster v. Goodman (Tex. Civ. App.) 167 S. W. 10; I. & G. N. Ry. Co. v. McAda (Tex. Civ. App.) 265 S. W. 723.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.