### ZILPHIA STEPHENS v. M. SUMMERFIELD ET AL.

Decided November 11, 1899.

**1. Practice on Appeal—Conflicting Evidence.**

In a case tried below without a jury, though the conflicting evidence was chiefly by deposition, yet the trial judge's findings thereon will not be disturbed unless the great preponderance and weight of the evidence makes it manifest that his decision was wrong.

**2. Notice—Possession—Homestead.**

That parties who have sold and conveyed a house and lot continue in possession thereafter, using it as a place of residence, is not notice to a broker negotiating the sale of a note, taken by them for the property and reserving a vendor's lien thereon, that they still claimed to own the property as being their homestead.

**3. Innocent Purchaser—Vendor's Lien Note—Homestead.**

One who purchases a negotiable vendor's lien note before maturity, for value and without notice, is protected against a claim to have the enforcement of its lien denied on the ground that the property was homestead, and the sale thereof, for which the note was given, but a sham and device to borrow money thereon.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

*English, Ewing & Walker,* for appellant.

*Watts & Aldredge,* for appellees.

FINLEY, CHIEF JUSTICE.—On the 12th day of February, 1893, appellees brought this suit to recover the amount due upon a promissory note executed by J. C. Criswell and payable to Zilphia Stephens for $500, with 10 per cent per annum interest, and for 10 per cent attorney's fees, and to foreclose a vendor's lien on three-fourths of an acre of land situated in the town of Cleburne, Johnson County, Texas, said note being dated May 22, 1889, due and payable to the order of Zilphia Stephens, on May 22, 1894; claiming that said note had been indorsed, negotiated, and sold by Zilphia Stephens to the J. B. Watkins Land Mortgage Company immediately after its execution, and that said company acquired said note in good faith for value, and without any knowledge of any defect therein or defense thereto, and that plaintiff acquired the same in good faith for value before maturity.

Defendants George W. Stephens and Zilphia Stephens answered by demurrers, general denial, and specially, that the lot was the separate property of Zilphia Stephens, and the homestead of George W. and Zilphia Stephens, and that the conveyance of the same by them to J. C. Criswell was simulated and pretended, and was made to secure a loan on their homestead, and that it was so understood between them and Criswell at the time the deed and note were executed, and that this was known to the J. B. Watkins Land Mortgage Company at the time it purchased and secured said note. That Stephens and wife then occupied the lot as a homestead, and had continued so to occupy it ever since.

By supplemental petition plaintiffs asserted as an estoppel a sworn statement of Zilphia Stephens and J. C. Criswell presented with the note to the land company, in which they stated that the sale and deed were made in good faith, and were not simulated or intended to evade the homestead laws.

The case was tried before the court, without a jury, on the 23d day of March, 1899. The death of George W. Stephens was suggested, and the case discontinued as to him. The trial resulted in a judgment against Criswell for the amount due upon the note, and against Criswell and Zilphia Stephens foreclosing the lien upon the lot. From the judgment Zilphia Stephens appealed.

The trial court filed these conclusions of fact:

"First. The court finds that the land described in plaintiffs' petition was the separate property of defendant, Zilphia Stephens, and on the 22d day of May, 1889, that it was and had been for a long time prior thereto the residence homestead of Geo. W. Stephens and his wife Zilphia Stephens.

"Second. On the 22d day of May, 1889, George W. Stephens and his wife, Zilphia Stephens, by their warranty deed of that date conveyed said

land to defendant J. C. Criswell, the deed being duly acknowledged and recorded. At the time of the execution of this deed defendant J. C. Criswell executed and delivered the note sued on, which recited that it was given as part purchase money of the lot or parcel of land, and the lien was expressly retained in the deed.

"Third. About the 6th day of July, 1889, one J. W. Lambard, a broker at Cleburne, at the request of Stephens and wife, sent said note, indorsed by Zilphia Stephens, together with the certificate of the county clerk of the record of the deed, and that it retained the lien, also a sworn statement of J. C. Criswell and Zilphia Stephens to the effect that the sale and conveyance of the land from Stephens and wife to J. C. Criswell was a bona fide transaction, and was not intended to evade the homestead laws of the State, to the J. B. Watkins Land Mortgage Company at Dallas, Texas, with an offer to sell the same to said company—said company being duly authorized to do business in this State. That said land mortgage company purchased said note, and therefor paid $500. That the same was paid in a draft in favor of Zilphia Stephens, and sent by the company to Lambard at Cleburne.

"Fourth. The sale and conveyance by Stephens and wife to Criswell and the execution of said note, was not a good faith transacton, but was the result of a scheme by Stephens and wife and Criswell to enable Stephens and wife to obtain a loan on this homestead. J. W. Lambard did not know anything about this scheme at the time he sent the note to the land mortgage company, but he did know that Stephens and wife were then occupying the lot.

"Fifth. I find that the J. B. Watkins Land Mortgage Company purchased the note in good faith and paid value therefor, relying upon the papers submitted to it, and believing said conveyance and execution of said note was a good faith transaction, and that the agents of said company had no notice at the time that it was not a bona fide transaction.

"Sixth. The J. B. Watkins Land Mortgage Company negotiated said note within a few days after it purchased the same.

"Seventh. Stephens and wife resided on the lot at the time of said conveyance to Criswell, and after the note was sold to the J. B. Watkins Mortgage Company, Criswell reconveyed the land to Zilphia Stephens. Stephens and wife continued to reside upon the lot until this suit was brought, and Zilphia has ever since resided and now resides thereon."

Upon these facts the judge pronounced these conclusions of law:

"The plaintiffs, M. Summerfield, J. B. Watkins, and J. F. Switzer, are entitled to recover of the defendant, J. C. Criswell, the unpaid balance on said note, principal, interest, and attorney's fees, which I find to be $872, with interest thereon from this date, and all costs of suit; also to a foreclosure of their lien upon said land as against said J. C. Criswell and Zilphia Stephens, and that the same be ordered sold, and the proceeds applied to the payment of said sum. And judgment is directed accordingly."

1. We have carefully considered the evidence contained in the statement of facts, and have reached the conclusion that it warranted the findings of fact made by the judge. The evidence was conflicting, and this conflict was necessarily determined by deciding the question of the credibility of the witnesses. While the conflicting testimony was by deposition, the trial judge was in quite as good position to decide that issue correctly as is this court, and unless the great preponderance and weight of the evidence makes it manifest that his decision was wrong, we should not disturb his findings. Two of the three witnesses relied upon by appellant to prove notice of the simulated character of the sale had, for the purpose of negotiating the note, sworn that the sale was bona fide and not intended to evade the homestead law. That swearing was done to secure money on the note, and now that the vendor's lien is sought to be foreclosed .they testify that it was all a sham. The trial judge may well be excused for declining to believe them in preference to the broker, Lambard, who had no interest to be subserved by false swearing. The other evidence relied on was the deposition of George W. Stephens, deceased. At the time he deposed, the homestead of himself and family was at stake, at least so far as the vendor's lien securing the note might endanger it. Under these circumstances the trial judge treated the witness Lambard as the more credible on the issue of notice, and in doing this we are not prepared to say that he erred.

2. The fact that the Stephenses were occupying the property as their homestead at the time of the negotiation of the note, and that Lambard knew that they were still living on the place, did not constitute notice that they still claimed to own the property. Their occupancy of the property was not necessarily inconsistent with a previous sale. Eylar v. Eylar, 60 Texas, 315.

3. The Watkins Land Mortgage Company, having bought the note before maturity, paying value therefor, without any notice of the simulated character of the sale, were protected as innocent purchasers, and their vendees, the appellees here, acquired the same rights and stand in the same attitude.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.