# HATFIELD et al. v. LOTTY.

No. 4241.   Opinion Filed June 15, 1915.

(149 Pac. 1171.)

1. **INSANE PERSONS—Pleading and Proof—Incompetency of Grantor.** Where a defendant files an unverified general denial for answer to a petition in ejectment, which is sufficient in its allegations of ownership and right of possession, and under such general denial offers a deed, purporting to have been signed by plaintiff, it is competent for plaintiff to offer evidence that at the date of such alleged deed, and for his entire life, plaintiff was and had·been an idiot, entirely without understanding.

2. **VENDOR AND PURCHASER—Notice—Incompetency of Grantor.** Where a person buys land upon the strength of the record title, and without any actual knowledge of the idiocy and entire want of understanding of one of the grantors, he is chargeable with all of the notice brought to him by the record upon which he relies, and if this record is such, and contains matters, that would put a person of ordinary prudence in doubt of, and upon inquiry into, the want of capacity of his grantor, then the law charges such purchaser with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought home to him.

3. **NOTICE—Constructive Notice.** Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.   Section 2926, Rev. Laws 1910.

4. **VENDOR AND PURCHASER—Notice of Title—Incompetency of Grantor.** The record of title in this case relied on by defendant contains matter sufficient to put a person of ordinary prudence in doubt of, and therefore, under the necessity of inquiring into, the mental capacity of the grantor, and if such inquiry had been made it would have disclosed that the grantor had been entirely without understanding since birth.   Therefore, such defendant is not in the position of an innocent purchaser without notice.

(Syllabus by Brewer, C.)

*Error from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Ejectment by Louis Lotty, by his guardian J. D. Kiker, against J. W. Hatfield and another. Judgment for plaintiff, and defendants bring error. Affirmed.

*Roscoe C. Arrington* and *John L. Arrington,* for plaintiffs in error.

*J. A. Baker,* for defendant in error.

Opinion by BREWER, C. This is a suit in ejectment, brought by Louis Lotty, as an incompetent person, by his guardian, which involves the south ½ of the S. W. ¼, and the S. W. ¼ of the S. E. ¼ of section 12, township 5 north, range 5 east, in Seminole county, against J. W. Hatfield and Tom Ragland. George L. Rose was later made a party, and answered, but neither he nor Ragland appears to be further concerned with the disposition of this case.

The principal defendant in the court below, Hatfield, filed for his answer an unverified general denial. After the institution of this suit, Louis Lotty died, and the cause was revived and has proceeded in the name of the administrator of his estate, who appears here as defendant in error, and who will hereinafter be referred to as plaintiff.

There were averments and proof by plaintiff that Louis Lotty received these lands as his allotment as a Seminole freedman, and that he was entitled to same and the possession thereof. Defendant, under his general denial, introduced record evidence of a chain of title from the allottee, passing through several persons to himself; after which he testified that he was not acquainted with the allottee, and knew nothing of his mental condition or want of capacity to contract. To meet this proof, plaintiff introduced a number of witnesses who had known the

allottee many years, some of them having known him all
his life. Their testimony may be summarized, briefly, into
the statement that it showed, beyond any question, that
Louis Lotty was, at the date of the various deeds purport-
ing to have been signed by him, an idiot, utterly and
wholly without understanding, and that this condition had
existed from birth. The evidence shows that he was
without sufficient mind to perform even the most menial
tasks, or to take care of himself, or to look after his
wants, but that he was a charge and dependent upon his
relatives, with whom he was permitted to make his home.
No attempt was made to rebut or contradict in any way
any of this evidence. The court at the close of the evi-
dence instructed the jury, reiterating the point in three
separate charges, that before plaintiff could prevail, in
any event, the jury must be satisfied by a preponderance
of the evidence that the allottee, at the date of his pur-
ported deeds, was "a person of unsound mind and *entirely
without understanding.*" The jury returned a verdict in
favor of plaintiff, to review which the defendant Hatfield
brings error, and complains: (1) That the court com-
mitted reversible error in allowing proof of the allottee's
mental condition; (2) that the court erred in its refusal
to instruct the jury to return a verdict in favor of de-
fendant.

1. On the first point, it is sufficient to say that
plaintiff's petition was sufficient in its allegations, and
that as the defendant answered by a general denial, no
reply was either called for or proper. Therefore, when
defendant introduced in evidence the muniments of a
chain of title in himself purporting to have come imme-
diately from the allottee, there was no error in allowing
plaintiff to introduce proof to show that the allottee was

entirely without understanding, and thus, at all times, incompetent to make a conveyance or other contract.

2. If the defendant stood here as he claims to stand, purely and solely as an innocent purchaser through a chain of title fair on its face and without notice, actual or implied, of the want of capacity of one of the grantors in his chain of title, a serious question would be presented. But, after a careful examination of the record, we do not think defendant stands in such position. He claims to have bought upon the strength of the record title, and without any actual knowledge of the idiocy of the original grantor; but it must be admitted that he is chargeable with all the notice that is brought to him by the record upon which he relies. If this record is such and contains matters that would put an ordinarily prudent purchaser in doubt of, and upon inquiry into, the want of capacity of his grantor, then the law will charge him with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought home to him. Section 2926, Rev. Laws 1910, provides:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

In elaborating upon the rule announced in this statute, which but gives expression to the common law, the Supreme Court of the United States, in the case of *Wood v. Carpenter*, 101 U. S. 141, 25 L. Ed. 809, says:

" 'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact,

he shall be deemed conversant of it.' *Kennedy v. Green*, 3 Myl. & K. 722. 'The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it.' "

We will now look to the record. At least three deeds signed by mark are shown to have come from the allottee. The first recites a consideration of $240 for 80 acres. It is made to H. M. Tate, acknowledged before C. O. Tate, is witnessed by R. M. Tate and Charles O. Tate, and purports to have been signed by mark. This consideration was obviously inadequate and wholly insufficient, when attention is called to the fact that two of the 40-acre tracts had been leased to persons, under improvement contracts providing for the building of separate sets of improvements, houses, outhouses, barns, gardens, wells, lawful fences and putting into cultivation of specified amounts of the land, and such improvement contracts antedated the first deed several years, and showed improvements, if they were put on the land, of a value far in excess of the consideration named, if the land had no value at all. It further appears that while this first deed contained covenants of warranty, yet that subsequent transfers, in so far as they are material to defendant's title, were all made without general covenants of warranty. An ordinarily prudent man would have probably wondered why a grantee holding under a deed of warranty should be unwilling to warrant his title, and there are other circumstances: In the improvement contracts heretofore mentioned, there are provisions that would have arrested the attention of any man of ordinary prudence. While these contracts purport to have been signed by the allottee by his mark, yet they bear inherent evidence of his want of capacity to handle

his own affairs. In one of said leases there is a provision prohibiting the subletting or transfer of the lease, or improvements thereon, "unless such transfer be in writing and signed by both parties in the presence of A. S. McKennon, attorney for the Seminoles, or his successor, attested by him and approved by the principal chief of the Seminole Nation," and it is further provided that in case disagreements should arise the complainant might select an arbitrator and the principal chief select another with power to settle the dispute. Similar provisions are found in the other improvement contract. Ordinarily, a person of full age—and this allottee was a gray-haired man—and fully competent to contract would not stipulate that a third person should select his arbitrator or decide upon whether or not his lessee could sublet the premises.

Taking these matters, as shown by the record it seems to us that an ordinarily prudent man would have felt it incumbent upon him to make some inquiry in regard to the competency of the person in whom his title found its source. If he had made any kind of inquiry—had gone out into the neighborhood and talked with the people at all—he could not have avoided the information that the allottee was utterly without reason or understanding. Therefore, applying the doctrine that he had knowledge of the things that a reasonable inquiry would have brought to him, where the circumstances are such as to require the inquiry, he cannot shield himself under the simple statement that he did not know. This conclusion being so clearly justifiable under the record presented by defendant himself, we shall not consider and pass upon the question of innocent purchaser without notice; but will call attention to the cases of *Mass et al. v. Dunmyer,* 21 Okla. 434, 96 Pac. 591, and *Conwill v. Eldridge,* 35 Okla. 537, 130

Pac. 912, and to sections 882, 888, 889, and 890, Rev. Laws 1910, which statutes define and relate to persons of unsound mind, their rights, liabilities, and duties.

Upon the whole record, and for the reasons given, the cause should be in all things affirmed.

By the Court: It is so ordered.