**RAMIREZ et ux. v. BELL et al.　(No. 7098.)***

Court of Civil Appeals of Texas. Austin.
July 27, 1927.

On Motion for Rehearing, Aug. 6, 1927.

**1. Vendor and purchaser ⬤⟶232(1)—In absence of proper inquiry, purchaser of land is charged with notice of claim of one in possession.**

As general rule, possession of land is constructive notice of possessor's right or claim and puts purchaser on inquiry as to nature thereof, and, in absence of proper inquiry, law charges purchaser with notice of possessor's claim on presumption that proper inquiry would disclose it.

**2. Vendor and purchaser ⬤⟶232(5, 6)—Purchaser may rely on grantor's deed alienating title absolutely, although grantor is in possession.**

Purchaser from grantee may rely on grantor's deed absolutely alienating title, although grantor continues in possession, and grantee's failure to record deed except where continued for unreasonable time does not affect such rule.

**3. Vendor and purchaser ⬤⟶232(5, 6)—Failure to register deed promptly may be considered in determining whether reasonable prudence requires purchaser from grantee to inquire as to grantor's possession.**

Failure of grantee to register deed promptly may be regarded as circumstance, when others accompany it, in determining whether reasonable prudence requires purchaser from grantee to inquire into rights of grantor in possession.

**4. Deeds ⬤⟶45—Deed, even if procured by representation that it was mortgage, held not void as forgery.**

Even if deed was procured, as alleged, by representation that it was only mortgage, it would not be void as forgery, in view of Pen. Code 1925, arts. 979–995, 1006–1011.

**5. Forgery ⬤⟶1—Common-law "forgery" was making or altering written instrument purporting to be act of another.**

"Forgery" at common law was making or altering written instrument purporting to be act of another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forgery.]

**6. Contracts ⬤⟶98—Instrument procured by fraud is not void, but voidable.**

Instrument procured by fraud is not void, but voidable at election of one defrauded.

**7. Bills and notes ⬤⟶373—Maker of fraudulent instrument may not assert fraud against bona fide purchaser.**

Maker of instrument procured by fraud may not assert such fraud against bona fide purchaser.

**8. Mortgages ⬤⟶186(6)—In suit to cancel deed and deed of trust, evidence as to good faith of mortgagee and whether he was charged with duty to inquire as to title held to present jury questions.**

In suit to cancel deed and deed of trust by grantee under deed, evidence held to make good faith of mortgagee and whether he was charged through plaintiff's possession of land with duty to make inquiry as to title jury questions.

**9. Mortgages ⬤⟶154(2)—Mortgagee held charged with knowledge of recitals in mortgagor's chain of title and facts coming to knowledge of his attorney examining title.**

Mortgagee making loan on land was legally charged with knowledge of all recitals in mortgagor's chain of title and such facts as came to his attorney in examining title.

On Motion for Rehearing.

**10. Mortgages ⬤⟶186(2)—In suit to cancel deed and deed of trust, pleadings held to put in issue good faith of mortgagee.**

In suit to cancel deed and deed of trust given by grantee thereunder, pleadings of plaintiffs and of mortgagor held to put in issue good faith of mortgagee in taking mortgage on property while in possession of grantor.

**11. Mortgages ⬤⟶186(6)—Inadequacy of consideration in mortgagor's deed with other circumstances held to raise issue of mortgagee's good faith in taking deed of trust while mortgagor's grantor was in possession.**

In suit to cancel deed and deed of trust, inadequacy of consideration in deed with other circumstances held sufficient to raise issue of mortgagee's good faith in taking deed of trust while grantor of mortgagor was in possession, regardless of evidence or lack of evidence of consideration paid by grantor to person from whom he bought land.

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused November 16, 1927.

(298 S.W.)

**12. Mortgages ⚖⇒154(3).—Mortgagee with actual knowledge of grantor's occupancy· held charged with his attorney's knowledge that homestead designation was recorded after deed to mortgagor.**

In suit to cancel deed and deed of trust, mortgagee, having actual knowledge of plaintiff's occupancy and use of property as home, was charged with knowledge that homestead designation of another tract set out in full in abstract of title, which mortgagee's lawyer examined and approved, was recorded after plaintiff's deed to mortgagor.

**13. Vendor and purchaser ⚖⇒228(4), 239(9).— In suit between grantor and innocent holder under his immediate grantee, evidence in disparagement of grantor's duly executed deed is not admissible, but such bona fide purchaser or innocent holder must acquire without notice.**

In suit between grantor and innocent holder under his immediate grantee, evidence in disparagement of grantor's duly executed deed is not admissible and cannot form basis of finding of fact or for judgment on such findings, but to be such bona fide purchaser or innocent holder one must acquire without notice.

Appeal from District Court, Travis County; George Calhoun, Judge.

Suit by Jesus Ramirez and wife against Harris Bell and another to cancel a deed and a deed of trust. From a judgment canceling the deed, and awarding plaintiffs judgment against the grantee therein, and establishing and foreclosing the deed of trust, plaintiffs appeal. Reversed and remanded.

Hart, Patterson & Hart, of Austin, for appellants.

Garrett, Brownlee & Goldsmith, of Austin, and W. R. Smith, Jr., of Odessa, for appellee Wendlandt.

Harris Bell, of Austin, Marshall O. Bell, of San Antonio, and D. J. Pickle, Warren W. Moore, O. Dickens, and Cofer & Cofer, all of Austin, for appellee Bell.

McCLENDON, C. J. Jesus and Refugia Ramirez, husband and wife, sued Harris Bell and Charles Wendlandt, Jr., (1) to cancel appellants' deed of June 25, 1925, conveying to Bell their homestead of 121.64 acres of farm land in Bastrop county; and (2) to cancel Bell's deed of trust to Wendlandt of August 6, 1925, securing $5,000, by lien upon the same property.

Trial to jury; directed verdict; judgment: (1) As to Bell, canceling his deed and awarding appellants $3,136.15 against him; and (2) as to Wendlandt, establishing and foreclosing his trust deed lien. Separate appeals (1) by Ramirez and wife against Wendlandt; and (2) by Bell against Ramirez and wife.

In the Bell appeal we are affirming the judgment canceling his deed. See opinion, 298 S. W. ——.

The correctness of the directed verdict establishing and foreclosing the trust deed lien depends upon whether the evidence conclusively shows Wendlandt to be a bona fide purchaser.

The pertinent facts, which are in large measure without substantial dispute, follow:

Ramirez and wife were ignorant Mexicans, speaking English sufficiently only to the ordinary transactions of people engaged in farming. In 1912 they bought the property (then raw land) from Seelig for $7,000, paying $1,000 in cash. The balance they had reduced to $1,860 in 1922, when it was extended so as to be paid off $310 annually; and to $1,434.20 when the trust deed was executed. Ramirez and his family lived on the property continuously after its purchase, put part in cultivation, and made some small improvements, suited to residence, use, and occupancy as a farm by persons of their limited means and station. In the summer of 1925 the property was worth from $9,000 to $15,000. Wendlandt loaned the $5,000 on his estimate of value at $9,000 to $10,000 for loan purposes. Seelig valued it at from $10,000 to $15,000. A reputable loan mortgage company to whom Bell applied for a loan placed the value at $10,500, and was willing to make a loan of $6,500, at 6½ per cent,, but "turned it down" on finding Ramirez in possession. Bell represented to this company that the property was worth $16,750.

The Bell deed was executed under these circumstances: Ramirez had been indicted in Bastrop county on four felony charges· of violating the liquor law. He engaged Bell to defend him, executing on June 20, 1925, his note for $1,000 which Bell claimed was only a retainer, and which he agreed to secure by lien on the farm, and the same day Bell had him execute an instrument designating an unimproved lot in Austin, which he had never occupied, as the homestead of himself and family. This designation was recorded in Bastrop county July 6, 1925, 11 days after execution of Bell's deed. Bell also prepared a trust deed to secure the $1,000 note for execution by Ramirez and wife, but, upon ascertaining from another attorney that a lien on a homestead would not be valid, he destroyed it. Ramirez and wife signed and acknowledged (before a notary employed in Bell's office) the Bell deed on July 25, 1925, Bell claiming it to be a conditional sale; Ramirez and wife claiming it to have been fraudulently represented to them as a mortgage to secure the $1,000 note. Bell, born and reared in Austin, was a young lawyer of about 2 years' practice. Wendlandt, 32 years old, had lived in Austin

---

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

since 1901, and had been in the real estate and loan business there since he was 17. He knew Bell, but not intimately; had had no business dealings with him. Bell, his negotiations with the mortgage company, having failed, made to Wendlandt two verbal applications for loan about a week apart. The first (about the middle of July, 1925, or a little later) was refused because Wendlandt was not then in funds. The second terminated in the loan and trust deed in issue. Wendlandt agreed to inspect the land and make a loan if the security was good. He went with Bell and inspected the land. They stopped at Ramirez's house, where they left their car, and upon returning after the inspection, Wendlandt asked Bell if a certain Mexican boy he saw on the place was renting it. Bell answered "No"; that that was the fellow he bought the place from, and then (quoting Wendlandt):

"I asked him if that boy owned the farm, and he said 'No; the old man did,' but I did not see any old man then; and then he said the Mexican was going off the farm and that Mr. Walter was going to look after it. I saw the Mexican man before I left there. I saw him out in the front yard when I walked up to the car or towards the car, and Mr. Walter and Mr. Bell stopped back in the cowlot, or right close to the lot. I talked to the Mexican. I spoke to him in English, and he spoke to me. I would recognize that Mexican if I were to see him. He is the same Jesus Ramirez. At the time I was out there was the first time that I ever seen him. I do not know yet whether that was the man who was supposed to have owned the farm. When I first spoke to the Mexican, I said, 'Howdy,' and then I asked him whether he was going to work the land, and he said, 'No'; he was going to move to San Antonio."

While returning to Austin Wendlandt agreed to loan Bell $5,000 on the place, if Judge Doom should approve the title. Bell delivered to Doom an abstract of title certified to July 4, 1925, together with the original Ramirez deed which had not then been recorded. Doom required recording this deed and the abstract, including it, certified to date. All this was done on August 4, 1925. Two days later Doom gave Wendlandt a written opinion (supplementing an opinion of December 30, 1899, by his father to Seelig), in which he certified that, subject to the Seelig debt and taxes, the abstracts, "together with my examination of the abstract company's books, show good title in Harris Bell." The loan was consummated on August 6, 1925, by Bell's executing the trust deed and three 8 per cent. notes, two for $500, due October 1, 1926, and 1927, respectively, and one for $4,000, due October 15, 1930. Wendlandt paid off the Seelig debt ($1,434.20) and taxes ($439.75), total, $1,873.75; and paid Bell the residue of the loan in money. Wendlandt had no actual knowledge of any infirmity in the Ramirez-Bell conveyance and relied on his own inspection as to value and Doom's opinion as to Bell's title.

The three following propositions embrace the substance of appellants' contentions to the effect that Wendlandt was not, as a matter of law, a bona fide purchaser:

(1) Appellants being in possession of the property when Wendlandt inspected it, and Bell's deed not being then of record, Wendlandt was charged as a matter of law with notice of appellants' claims.

(2) Appellants' evidence that they signed the Bell deed upon representation that it was a mortgage raised the issue of the genuineness of the instrument as their act. In other words, under this evidence, the deed was in law a forgery and void.

(3) The facts and circumstances in evidence were sufficient to put Wendlandt upon inquiry as a matter of law—or, in any event, were sufficient to support a jury finding that Wendlandt was put upon inquiry—with reference to the claim of appellants.

We will consider these contentions in the above order.

[1] Generally speaking, possession of real estate "is equivalent to registration" (Mainwarring v. Templeman, 51 Tex. 205), and is constructive notice of the possessor's right or claim, in that, as a matter of law, it puts a purchaser upon inquiry as to the nature of the claim of right of the possessor, and in the absence of proper inquiry the law charges the purchaser with notice of that claim upon the presumption that proper inquiry would disclose it. This rule is elementary.

[2] Where a grantor, after executing a deed in proper form and in terms absolute as an alienation of his title, continues in possession, it is held in this and some other jurisdictions that a purchaser may rely upon the terms of the deed as a declaration of the grantor that he has parted with title, and, as a matter of law, he is relieved of further inquiry. Eylar v. Eylar, 60 Tex. 315; Hurt v. Cooper, 63 Tex. 362; Heidenheimer v. Stewart, 65 Tex. 321; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Graves v. Kinney, 95 Tex. 210, 66 S. W. 293; Stephens v. Summerfield, 22 Tex. Civ. App. 182, 54 S. W. 1088 (writ of error denied); Cooper v. Ford, 29 Tex. Civ. App. 253, 69 S. W. 487 (writ of error denied); Bryant v. Sons of Herman (Tex. Civ. App.) 152 S. W. 714 (writ of error denied); Brooker v. Wright (Tex. Civ. App.) 216 S. E. 196; Sperry v. Moody (Tex. Civ. App.) 269 S. W. 272; Welborn v. Earle (Tex. Civ. App.) 268 S. W. 982.

Some jurisdictions hold to the contrary. 39 Cyc. 1753; 2 Tiffany, Real Property (2d Ed.) 2238. Tiffany makes the following comment on the rule followed in this state:

"One difficulty with this latter view is that it imputes to a conveyance an effect as a declaration by the grantor, for the purpose of raising an estoppel against him, which is not necessarily in

accord with the understanding of the parties or with the legal effect of the conveyance. One executing, for instance, a conveyance of a fee-simple title, may perfectly well acquire, by the same or a subsequent transaction, an equity against the grantee or a lease for a limited period, and it is difficult to see why his conveyance should be regarded as a declaration that he has not acquired, or will not acquire, such an interest, or why a subsequent purchaser should be justified in assuming, for the purpose of being relieved from any duty of inquiry, that the grantor's continuance in possession is wrongful rather than rightful."

The Eylar Case holding prescribes the limit of duty of a purchaser of real estate, and, in view of its long establishment in this state, it should be treated as a rule of property, regardless of one's individual views concerning its inherent soundness.

Appellants' contention is that the Eylar rule does not apply to conveyances which have not been recorded—a contention based in the main upon the following language in the Eylar opinion:

"If the inquiry is prosecuted to the highest source which the law of the land declares shall exist for the determination of title, and to the source which the parties have created as the highest evidence of their respective rights, can it be true that it is further necessary to examine sources inferior and make inquiry as to whether or not there are claims, or even rights, in others not evidenced as the law requires, or otherwise the purchaser be charged with constructive notice of secret vices in the title which he buys.

"To so hold, we are of the opinion, would be to strike at the very foundation of the policy upon which registration laws rest."

But for holdings noted later, the contention would be strengthened by the following notation in granting a writ of error in Harris v. Hamilton (decided on another point [Tex. Com. App.] 221 S. W. 273):

"We are inclined to the view that since the deed to King was not registered when A. D. Hamilton bought, and the case was therefore not within the rule of Eylar v. Eylar, 60 Tex. [315], the possession of the land by the tenants of King's grantors placed upon Hamilton the duty of inquiry, affording constructive notice, in other words, of their title. Watkins v. Edwards, 23 Tex. 443; Glendenning v. Bell, 70 Tex. 632 [8 S. W. 324]."

Although sometimes held to be based upon estoppel, the rule also rests upon "the principles of the law existing in favor of a bona fide purchaser," the question being:

"Whether the court, in ascertaining his rights, should look behind the evidence of their rights which the other parties had thus created and upon which he acted, or should, in his favor, hold them to the transaction as they had made it appear to be. The decisions of this court have, it seems to us, settled the question in favor of the purchaser." Graves v. Kinney, above.

In the Eylar Case the purchaser had examined and relied upon the record, and the language quoted was therefore peculiarly àpropos. The opinion was by Judge Stayton, who also wrote in Hurt v. Cooper and Love v. Breedlove, the latter after he became Chief Justice. In the former he made no reference to registration, but based his holding upon the purchaser's reliance upon the possessors' "deed for divestiture of title." So in the latter the possession was held "not sufficient in the face of the absolute deed to Porter to affect appellee with notice of any secret agreement between Love and wife and Porter." While it does not affirmatively appear from the opinion, the record in that case shows that this deed was not of record at the time it was exhibited to the mortgagee.

The exact point under discussion was decided adversely to appellants in Bryant v. Sons of Herman, above. We think the holding in that case is sound, and, in view of denial of writ of error, must be regarded as having the sanction of the Supreme Court.

[3] The mere failure to record the deed, except perhaps where continued for an unreasonable length of time, should not, we think, operate to render the rule in Eylar and other cases cited inoperative. On the other hand, registration does afford absolute protection to the grantee against subsequent impairment of his title by acts of his grantor or the latter's creditors; where the grantor remains in possession it affords the grantee's only protection. Common business prudence would therefore dictate such registration, where such protection is important, and failure to register promptly may be regarded as a circumstance, when others accompany it, in determining whether reasonable prudence requires inquiry, either as a question of law or of fact.

[4] The second contention that the deed was a forgery, and therefore void, if procured by representation that it was only a mortgage, is overruled.

[5] Forgery, at common law, was the making or altering of a written instrument "purporting to be the act of another." 26 C. J. 898.

Some jurisdictions hold that procuring execution of an instrument by misrepresentation of its contents is forgery. For cases see 26 C. J. 900, notes 52 and 53, and note to Illinois v. Pfeiffer (Ill. Sup.) 26 L. R. A. (N. S.) 138. But, as stated by the author of the note last cited:

"By the great weight of authority it is held that fraudulently procuring a genuine signature to an instrument does not constitute forgery."

The express language of our Penal Code defining forgery is in accord with this pronouncement. See articles 979 to 995, inclusive, and articles 1006 to 1011, inclusive, which latter deal specially with forgeries of land titles.

Except as to mere legal or constructive fraud, some degree of moral turpitude attends every fraudulent transaction, and many such transactions have by statute been placed in the category of crimes, with penalties varying with the supposed degree of turpitude. Forgery generally is treated under chapter 1 of title 14 of our present Penal Code, entitled "Offenses Affecting Written Instruments," and articles 1000 and 1001 of that chapter make felonies, respectively, of falsely reading or interpreting an instrument or fraudulently substituting one instrument for another. These offenses are not, however, constituted forgeries by any language in the statute, and it is to be noted the maximum penalty prescribed therefor is 5 years' penitentiary confinement, whereas the maximum for forgery is 7 years.

[6, 7] An instrument procured by fraud is not void, but is only voidable at the election of the defrauded, and the maker will not be permitted to assert the fraud against a bona fide purchaser.

[8, 9] We sustain that portion of appellants' third contention to the effect that the evidence raised as an issue of fact Wendlandt's bona fides, and that appellants were entitled to have submitted the issue whether, under the circumstances, he was charged with the duty of inquiry. He was legally charged with knowledge of all recitals in Bell's chain of title and of such facts as came to Doom's knowledge in the course of his employment as attorney to examine the title.

"Knowledge of such facts as ought to put a prudent man upon inquiry as to the title charges a subsequent purchaser with notice not only of those facts which are actually known, but also of all the other facts which a reasonably diligent investigation would have ascertained, provided the inquiry becomes a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding." 39 Cyc. 1703.

The following circumstances raise, we think, the issue of notice as a fact question: Ramirez and wife were ignorant Mexicans. They purchased the property in 1912 when it was raw land for $7,000, which they had paid to within $1,434.20. They had lived on the land ever since and were living there when they conveyed to Bell, when Wendlandt inspected it, and when he made the loan. Bell's deed recited a total consideration of $5,000 cash, which was only from one-third to one-half of the actual value of the land at the date of the deed, and $2,000 less than it cost Ramirez 13 years before. Bell's deed had been executed only about a month before negotiations with Wendlandt began; only 5 days before it was executed Ramirez designated an unimproved lot in Austin, which he had never lived on, as his homestead; and this designation was recorded in Bastrop county 11 days after

Bell's deed was executed, at which time, if the recitals in Bell's deed were correct, all title had passed out of Ramirez, and a prior homestead designation could have no purpose. Bell, though claiming under an absolute deed, had left the grantors in possession and was withholding his deed from record up to the very time the loan negotiations were completed.

The gross inadequacy of consideration recited in Bell's deed was a potent circumstance, and, taken in connection with the other circumstances, and especially the homestead designation, its filing after execution of Bell's deed, the continued possession of the grantors, and the withholding of Bell's deed from record were sufficient to raise the fact issue of notice.

We have endeavored to make a careful examination of the authorities upon the effect of inadequacy of consideration alone as notice. The cases are divided into three classes: Those in which the inadequacy appears (1) in the price paid by the party claiming to be an innocent purchaser; (2) in the deed of the latter's immediate grantor; and (3) in some antecedent conveyance in the chain of title.

The facts in this case fall within the second class as to which the rule applied is thus stated in 2 Tiffany, Real Property (2d Ed.) 2243:

"A purchaser has occasionally been held to be charged with notice of the inadequacy of the consideration recited in a conveyance under which his grantor claims, so as to be put on inquiry as to whether the title is not defective. But such a view has been regarded as inapplicable when the conveyance had been executed a number of years before."

Cyc. states the rule:

"A nominal or grossly inadequate consideration recited in a deed is a sufficient circumstance, for a reasonable time after such deed is made and recorded, to put a purchaser on inquiry; but after it has remained of record for some years unquestioned, a person about to purchase under it has a right to conclude that there was no vice in the deed, that a sufficient consideration had in fact been paid, or it would have been attacked within a reasonable time; and he is justified in relying upon it." 39 Cyc. 1718.

The following cases support the quoted texts: Kinney v. McCall, 57 Wash. 545, 107 P. 385; Ross v. Kenwood Inv. Co., 73 Wash. 131, 131 P. 649; Lawley v. Hickenlooper, 61 Utah, 298, 212 P. 526; Hatfield v. Lotty, 48 Okl. 173, 149 P. 1171; Winters v. Powell, 180 Ala. 425, 61 So. 96; Babcock v. Collins, 60 Minn. 73, 61 N. W. 1020, 51 Am. St. Rep. 503; Hume v. Franzen, 73 Iowa, 25, 34 N. W. 490; Gaines v. Saunders, 50 Ark. 322; 7 S. W. 303.

The trial court's judgment as between Ramirez and wife and Wendlandt is reversed and the cause remanded to that court for a

new trial. In other respects the judgment is disposed of by our opinion in Bell's Appeal, 299 S. W. 655.

Reversed and remanded.

### On Motion for Rehearing by Appellee Wendlandt.

[10] Appellee Wendlandt first contends that there was no pleading sufficient to raise the issue of his bona fides, except the allegation by plaintiffs that they were in possession of the property, using it as homestead, when he inspected the land, and that, since their possession alone was not sufficient to take the case to the jury on this issue, the directed verdict was proper.

We overrule this contention for the following reasons:

Appellants' pleadings set forth fraud in the execution of the Ramirez-Bell deed; its recited $5,000 cash consideration; its date; and the fact that it was recorded; also, that the land was then worth $125 an acre. They recite that Wendlandt inspected the property and found appellants in possession, occupying and using the property as a homestead, and allege:

That Wendlandt "was put upon inquiry, and that the exercise of ordinary diligence would have led to a knowledge of the facts therein set out, and the nature of plaintiffs' claim, and, had he used said ordinary diligence and pursued the knowledge that he had, the said Charles Wendlandt, Jr., would have ascertained that the plaintiffs herein were claiming, using, and occupying said land as owners of said land, and that the alleged deed was in fact void, and was obtained through fraud and mistake and of no effect as to them as hereinbefore set out."

It is further alleged that:

"It was the duty of the said Charles Wendlandt to inform himself of the nature and extent of their said ownership and possession before he made such loan to the said Bell, and failing to so inquire, knowing of their occupancy of the premises, the said Wendlandt is not an innocent holder of said mortgage, but took the same with knowledge and notice of their said rights therein."

Wendlandt, in addition to resisting plaintiffs' suit, filed a cross-action setting up his notes, asking that they be established as a lien upon the property, and that the lien be foreclosed. In this pleading he affirmatively asserted that he was an innocent purchaser, having made the loan upon representation by Bell that he owned the property, and upon advice of his attorney that the title was good, based upon abstracts furnished by Bell. He set up the Ramirez-Bell deed, giving its date and the date it was recorded, and claimed to be an innocent purchaser because of that deed and its recitals, and the fact that he had no knowledge or notice of any infirmity therein. He also alleged the purchase of the property in 1910 by Ramirez

from Seelig, and while the total consideration is not shown, he alleged that there were vendor's lien notes to the amount of $6,250. The abstracts showed the Ramirez-Bell deed, and the homestead designation, and their respective dates and record dates. These were introduced in evidence by Wendlandt, and his attorney testified that he passed the title upon examination of these abstracts and what they contained.

The judgment not only denied Ramirez's prayer to cancel the trust deed, but also granted the prayer of Wendlandt in affirmatively establishing his trust deed lien and foreclosing it against both Ramirez and wife and Bell.

The pleadings of both parties clearly put in issue the bona fides of Wendlandt, and called for a submission of that issue to the jury upon all the facts and circumstances bearing thereupon which the evidence raised.

[11] It is next contended that there was no evidence of any conveyance from Seelig to Ramirez, and consequently no showing that the total consideration for such conveyance was $7,000. We think this issue was immaterial. The inadequacy of consideration in Bell's deed, together with the other circumstances noted, was sufficient, we think, to raise the issue of Wendlandt's bona fides, even if there were in fact no evidence of the consideration paid by Ramirez to Seelig.

We should state, however, in this connection, that while the deed from Seelig to Ramirez, which was introduced by both Ramirez and Wendlandt, was dated in 1912, and showed a total consideration of $7,000, of which $1,000 was cash, the property described in this deed was lot 22 and part of lot 23 in Ed Seelig's subdivision; whereas, the property involved in this suit was lot 35 of that subdivision. It is quite apparent that the introduction of this deed was a mistake, but it appears to have been participated in by all parties to the suit, and the error was not discovered until after our original opinion in this case was handed down. It does appear, however, from Wendlandt's cross-action that Seelig conveyed the property in question on November 26, 1910, to Ramirez, by deed recorded in volume 48, p. 252, Bastrop County Deed Records (the 1912 deed in evidence being recorded in volume 53, p. 73, of said records), and that this deed retained a vendor's lien to secure notes aggregating $6,298.40; that this amount had on November 10, 1922, been reduced to $1,860, and the lien extended; and that when the deed of trust was executed the amount still due was $1,484.20, and there was additionally due $439.75 taxes. It therefore appears from Wendlandt's own pleadings that the consideration Ramirez paid Seelig for the land was $6,298.40 in notes alone.

[12] Wendlandt further contends that the homestead designation was not a link in his chain of title, and therefore he was not

charged with knowledge of it, there being no evidence that he actually knew of it. This designation was set out in full in the abstract of title Doom examined and approved, and showed on its face that it was executed 5 days before the Bell deed, and was not recorded until 11 days thereafter. Wendlandt had actual knowledge of the occupancy and use of the property by Ramirez and his family as a home, and knowledge of this homestead designation was brought home to his attorney in passing upon the title for the purpose of making the loan. Whatever significance may be attached to the designation as a circumstance is a proper evidentiary matter.

[13] The only remaining contention in Wendlandt's motion which we deem worthy of notice is expressed in the following quotation:

"In a suit between grantor and an innocent holder under his immediate grantee evidence in disparagement of grantor's duly executed deed is not admissible and is incompetent and cannot form the basis of a finding of fact, or be the predicate for a judgment on such findings."

This is correct as an abstract proposition of law where there is in fact a bona fide purchaser, or, as expressed in the quotation, "an innocent holder." But to be a bona fide purchaser or innocent holder one must acquire without notice. If the quoted proposition were correct where one purchased with notice, it would be imposible in any case to set aside a deed absolute in form as against one holding for value under the grantee in such deed.

The motion is overruled.