## ZURICH GENERAL ACCIDENT & LIABILITY INS. CO. v. WOOD et al. (No. 3087.)

Court of Civil Appeals of Texas. Amarillo. Oct. 17, 1928.

Rehearing Denied Nov. 21, 1928.

Chamberlain, Green & Wade, of Dallas, and Jos. H. Aynesworth, of Stinnett, for plaintiff in error.

W. J. Oxford, of Stephenville, and J. A. Johnson, of Mineral Wells, for defendants in error.

RANDOLPH, J. This suit is an appeal to the district court of Hutchinson county, Texas, by appellant insurance company from a judgment of the Industrial Accident Board of Texas, awarding compensation to Mrs. Wood and her minor children for the death of the husband and father, W. F. Wood. On trial in the district court, judgment was rendered in favor of appellees, and appeal was taken therefrom to this court.

W. F. Wood, an employee of Kenyon-Kearns Feed Company, was attempting to crank a Ford truck, and the truck started "rolling up," pushing Wood in front of it,

and it rolled about two-thirds of the way across the street. Wood was either unable to get out from in front of the car, or was attempting to stop it by pushing against it, and the car pushed him into a gravel wagon, which was passing, and the wagon wheel rolled over one of Wood's feet, and he was pushed against the wagon and held there until it passed. Wood was then enabled to get from in front of the car, and it rolled on until it struck a building on the other side of the street. From the time the car started pushing Wood, he was unable to check it until it struck the wagon. The car struck the left rear wheel of the wagon. At the time the impact came between the car and Wood's body and the wagon wheel, Wood turned his back to the car, and apparently, when he realized that the wagon was against him, placed his hands against the body of the wagon and braced himself against the car. The car did not hit the wagon, Wood being between it and the wagon. The car was not damaged in any way. Wood was not knocked down, but, when the witness got to him, Wood told him that his foot was hurt, and he was helped across the street into the feed building. This was the only injury Wood complained of at that time, and stated that he did not think he was hurt badly anywhere else.

In about eight or ten days, he complained of his back hurting him, and a doctor, diagnosing his condition, diagnosed it as an attack of appendicitis, and he was taken to Amarillo, where he was operated on. Dr. R. D. Gist, who was the surgeon operating, found that his appendix was not affected, and, on further investigation, discovered a diseased kidney. Dr. Gist testified, as to the condition in which he found the kidney and his opinion of what caused the condition, substantially as follows: That the right kidney was a sack of pus, only the capsule of the kidney remaining; it was smaller than normal. On cross-examination, the doctor testified: That he made a physical examination of Wood before operating on him for the purpose of a diagnosis, and found that he had fever, rapid pulse, distention of the abdomen, difficulty of breathing, and marked tenderness throughout the abdomen. The condition of the kidney was chronic, with acute acerbation. The doctor did not know how long standing such a condition would exist before it became chronic, but says this condition had been existent for many years, and that, if a blow is delivered to the region of a person's kidney of sufficient violence to cause inflammation and adhesions, it might or it might not cause immediately a great deal of pain to the person, and there would not necessarily be external evidence of the injury. The patient would more than likely complain of pain immediately following the blow. If a man suffers injury of sufficient violence to involve a kidney, in some cases he would pass blood in his urine, and in others not. The doctor also stated that he was unable to state what the inflammation of Wood's kidney was due to; it might be due to tuberculosis.

In the argument of the case and while counsel for plaintiff was addressing the jury, the defendant offered in evidence a certain interrogatory No. 6, to the introduction of which the plaintiff objected and which will be discussed later. This question and answer were admitted in evidence by the trial court, and in answer to the question Dr. Gist testifies that the condition of the kidney could have been brought about by external physical injury to Wood's person, by his body having been caught in an impact between the hind wheel of a wagon loaded with gravel and the radiator and front part of the forward moving car, striking him in the right side and back in the region of his right kidney. The witness Mayfield, who was manager for Kenyon-Kearns Feed Company, and under whom Wood worked, testified that during the time Wood worked for him he was apparently in good health.

Appellant, by several propositions in varied forms, presents the alleged error that the burden of proof is placed on the claimants for compensation to establish their right to recover, and in such a case, where the claimant's pleadings contain a specific allegation that the death of the employee, on account of whose death compensation is claimed, "resulted from wounds and bruises to his side and back, which caused the kidney to rise, from which inflammation and pus contained in said kidney, produced from said external injury, peritonitis set up," the said claimed injury occurring January 31, 1927, and the death occurring on February 17th, following an operation on a diagnosis of appendicitis, there must be evidence of probative force offered in support of such allegation. In the absence of such evidence, the court should instruct a verdict for the insurance carrier, and a failure to do so on timely request is error.

■■ The statement made of the evidence just preceding shows that there was evidence that the diseased condition of the kidney could have been caused by the crushing of Wood's body against the wagon wheel, and that an external bruise might not have been occasioned by the impact, and, yet, notwithstanding such external injury did not appear to have been occasioned, the injury to the kidney might have been occasioned by such crushing of the body of Wood between the wheel and car. We are not to pass upon the probative force of this testimony; that is a question for the jury. But we do hold that there is evidence which warranted the verdict of the jury in their finding that Wood did receive such injuries.

■ The trial court properly charged the

jury that the burden of proof was on the defendant, Mrs. Wood, and whether this burden had been met by the evidence was a question for the jury. Stooksbury v. Swan, 85 Tex. 563, 22 S. W. 963. "The law does not impose upon a jury the duty of reconciling a conflict in the testimony of witnesses; it is impossible to reconcile positive and unequivocal, affirmative and negative, evidence." Houston E. & W. T. Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 972.

■ The evidence of Dr. Gist left an open question for the jury to answer, and they answered it in favor of thei defendant. Their answer being supported by the evidence, we have no authority to make a different finding.

■ While the verdict of the jury is not conclusive on the credibility of the witnesses where they testify by deposition, nevertheless the appellate tribunal will defer to the judgment of the court of first instance in weighing the evidence, even though entirely read from depositions. Brown v. Lazarus, 5 Tex. Civ. App. 81, 25 S. W. 71; Stephens v. Summerfield, 22 Tex. Civ. App. 182, 54 S. W. 1088 (writ denied).

■■ The appellant assigns error in the action of the trial court in admitting in evidence the interrogatory No. 6 and answer thereto by the witness Dr. Gist, referred to above. It does not appear from the record that appellant made any effort to postpone or continue the case, in order that the witness might be found and interrogated. The admission of testimony after the closing of the evidence in the case is always a matter that is addressed to the sound discretion of the trial judge, and, unless such discretion is clearly shown to have been abused, a case will not be reversed because of such action on the part of the lower court. We cannot say that the admission of this testimony was an abuse of the trial court's discretion.

■ The question and answer complained of is as follows:

"Interrogatory 6. If in answer to any of the preceding interrogatories you have stated that the said W. F. Wood was suffering from peritonitis, and that he had an abscess in the right kidney about which adhesion and inflammation was present, then state whether or not said acute condition could have been brought about by external physical injury to W. F. Wood's person, by his body having been caught in an impact between the hind wheel of a wagon loaded with gravel and the radiator and front part of a forward moving Ford car, the latter striking him in the right side and back in the region of said right kidney?"
To the sixth interrogatory he answers: "Yes."

The question was a hypothetical question, based upon the conditions actually shown by the evidence to exist and was proper.

■ The trial court submitted to the jury special issue No. 4, as follows:

"What was the average weekly wage of W. F. Wood on the 31st day of January, 1927, and for some time prior thereto?"

The defendants, in their cross-action, in the matter of weekly wage earned by Wood, upon which they base the amount of compensation claimed by them, allege as follows:

"* * * That the said W. F. Wood was employed by said Kenyon-Kearns Feed Company to do labor and perform duties in connection with said company's feed store located in Borger, Texas, from the 1st day of August, 1926, to the 1st day of January, 1927, and worked in such employ and capacity for six days each week at a wage of $150 per month; that he was further employed from the 1st day of January, 1927, to his death, which occurred on the 17th day of February, 1927, at a salary of $175 per month, and at $38.8269 per week of six days; 60 per cent. of which is $23.296; that his average annual wage, as defined in the Workman's Compensation Act, was $2,019; that on account of the death of the said W. F. Wood, caused from said injuries while in the course of his employment, the beneficiaries herein are entitled to $20 per week for 360 weeks, one-half to be paid to the defendant, Mrs. Marion Wood, and the other one-half, share and share alike, to the six minor defendants, or one-twelfth to each of said minor defendants, upon the date of the death of the said W. F. Wood, to wit, 17th day of February, 1927."

Wood had been working for the Kenyon-Kearns Feed Company, at the time of his death, from the 1st day of August, 1926, until the 1st day of January, 1927, six days of every week, at a wage of $150 per month, and from the 1st day of January, 1927, to the date of his death, the 17th day of February, 1927, at $175 per month. To support the above-quoted pleadings, the defendants tendered by their witness, Mrs. Wood, proof that she had figured on Wood's monthly wage at $175 per month and divided same by 26, giving a daily wage of $6.73. This she then multiplied by 300 working days, which aggregated $2,019 a year, and this she again divided by 52, giving, according to her testimony, the average weekly wage of $38.62 and 6.9 mills. She then calculated 60 per cent. of this last amount, which resulted in the amount of $23.-29 and 6 mills. This is all the evidence that was offered to sustain the average weekly wage earned by Wood, and it was properly objected to.

Our statute defines "average weekly wage" as follows:

" 'Average weekly wages' shall mean:
"1. If the injured employé shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.
"2. If the injured employé shall not have worked in such employment during substan-

tially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employé of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employé, or other employé engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

R. S. art. 8309.

It will therefore be seen that the judgment rendered had no legal basis, and, there having been no finding of fact of an average weekly wage based on the time of employment of deceased and the wages received by him for the time, considerably less than a year, which he worked, we must reverse the judgment. Federal Surety Co. v. Shigley (Tex. Civ. App.) 7 S.W.(2d) 607, 608, and authorities therein cited.

No other reversible error in the record, all other assignments and propositions are overruled. For the error indicated, the judgment of the trial court is reversed and remanded for a new trial.

Reversed and remanded.